# SAVIN, Petitioner.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF CALIFORNIA.

No. 1553. Argued April 25, 1889.— Decided May 13, 1889.

The courts of the United States have power to punish, by fine or imprisonment, at their discretion, misbehavior in their presence, or misbehavior so near thereto as to obstruct the administration of justice, although the offence is also punishable by indictment under Rev. Stat. § 5399.

Attempting to deter a witness, in attendance upon a court of the United States in obedience to a subpœna, and while he is near the court room, in the jury-room temporarily used as witness-room, from testifying for the party in whose behalf he was summoned, and offering him, when in the hallway of the court, money not to testify against the defendant, is misbehavior in the presence of the court.

Within the meaning of § 725, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court.

Although the word "summary," as used in the first section of the act of March 3, 1831, (4 Stat. 487, c. 99,) was omitted from the present revision of the statutes, the courts of the United States have the power to punish by fine or imprisonment, at their discretion, contempts of their authority, in the cases defined in § 725.

In proceeding against a party for contempt, the court is not bound to require service of interrogatories upon the appellant to afford him an opportunity to purge himself of contempt in answering, but may, in its discretion, adopt such mode of determining the question as it deems proper, having due regard to the essential rules that prevail in the trial of matters of contempt.

THE case, as stated by the court in its opinion, was as follows:

The appellant, claiming to be illegally imprisoned under color of the authority of the United States, presented to the Circuit Court of the United States for the Southern District of California his petition for a writ of *habeas corpus.* The prayer for the writ was denied, and the petition was dismissed. This appeal brings up the judgment of the court for review.

It appears that on the 27th day of February, 1889, the District Attorney stated to the District Court of the United States for the Southern District of California that he had been informed that one of the witnesses for the government in the case of *The United States* v. *Hippolyte Goujon,* then pending in that court, had been corruptly approached, and an effort made to intimidate him from testifying. The witness alleged to have been thus approached was on the same day examined under oath in open court, in the presence of the respondent, who was in the custody of the marshal. The evidence was taken down by a stenographer, designated by the court and acting under oath. As the result of that examination an order was made that the appellant be cited to show cause before the District Court, at a specified hour, on the next day, why he should not be adjudged guilty of contempt. On the succeeding day, the citation having been duly served, the matter came on for hearing, the respondent being present in court, and represented by counsel. He demanded of the prosecution "service of interrogatories." The demand was denied by the court, and to that ruling he excepted. Witnesses having been examined on behalf of the government, and the respondent having testified in his own behalf, (but to what effect does not appear from the record,) and the matter having been submitted, the District Court, upon the testimony taken down by the stenographer, entered the following order and judgment:

"Whereas, during the progress of the trial of the action of *The United States of America* v. *H. Goujon,* in this court, on the 27th day of February, 1889, one Bartolo Flores, a witness on the part of the government duly subpœnaed and in attend-

ance upon the court, testified, in substance, that while in said attendance, on said 27th of February, one Alejandro Savin, on two several occasions, once in the jury-room of said court, temporarily used for witnesses, and within a few feet of the court-room, and once in the hallway of said court building, immediately adjoining said court-room, did approach said witness, and in said jury-room did improperly endeavor to deter the said witness from testifying in behalf of the government in said cause, and in the said hallway he offered the said witness money not to testify against the defendant in said action of *The United States* v. *Goujon ;* and whereas, upon such testimony of said Flores, this court then and there made an order directing the said Savin to show cause before this court, at 9.30 o'clock A.M., on the 28th day of February, 1889, at the court-room thereof, why he should not be adjudged guilty of a contempt of this court; and whereas, on said 28th day of February, the said Savin appeared with counsel in response to said order ; whereupon the said matter was heard in open court, and witnesses for and against him were sworn, and their testimony given, and the same having been duly considered by the court, the court now finds the facts to be : That during the progress of the trial of the action of *The United States of America* v. *H. Goujon,* in this court, on the 27th day of February, 1889, one Bartolo Flores, a witness on behalf of the government, duly subpœnaed and in attendance upon the court, while in such attendance, on the said 27th day of February, was on two several occasions, once in the jury-room of said court, which was temporarily used for a witness-room, and which is located within less than seven feet of the court-room, and once in the hallway of said court building, immediately adjoining the court-room, was approached by the respondent, Alejandro Savin, and said Savin did then and there, in said jury-room, unlawfully attempt and endeavor to deter said witness, Flores, from testifying for the government in the aforesaid action, and in said hallway the said Savin did at the time stated unlawfully offer the said witness, Flores, money not to testify against the defendant therein, the aforesaid Goujon ; from which facts it is considered and adjudged by the court

that the said respondent, Alejandro Savin, did thereby commit a contempt of this court, for which contempt it is by the court now ordered and adjudged that the said Alejandro Savin be imprisoned in the county jail of Los Angeles County, California, for the period of one year.

"The marshal will execute this judgment forthwith.

"February 28, 1889. "Ross, *District Judge.*"

Pursuant to that order, and in conformity with a warrant, reciting that he had been convicted of a contempt of the court, the respondent was committed to jail. In his petition he claimed that the District Court had no jurisdiction or legal authority to try and sentence him in the manner and form above stated, for these reasons: 1. The matters set out in the judgment do not constitute a contempt of court provided for by § 725 of the Revised Statutes of the United States. 2. The proceedings were insufficient to give the court jurisdiction to render judgment. 3. The judgment is not based or founded upon any proceedings in due course of law, and is, therefore, void.

*Mr. J. A. Anderson* for appellant.

I. The District Court had no jurisdiction to summarily punish appellant for the matters and things set out in its judgment ordering his imprisonment.

The only jurisdiction that District and Circuit Courts of the United States have to punish for contempt is derived from the act of March 2, 1831, 4 Stat. 487, c. 99, now §§ 725, 5399, of the Revised Statutes. The language of that statute is imperative. "The power of the several courts of the United States to issue attachment and inflict summary punishment for contempt of court shall not be construed to extend to any cases except," etc.

The act then proceeds to state the *cases* of contempt that could be punished summarily, and then in the second section points out the cases that should be punished by indictment.

The obvious intent of this imperative limitation was to pre-

vent the United States courts from following the example of the English courts in summarily punishing persons for contempt, in a vast variety of cases, which they held to be constructive contempts.

Congress obviously thought that all that was necessary for the prompt vindication of the dignity and authority of the court was to empower the court to punish summarily: (1) Misbehavior, causing a disturbance of which the judge holding the court was conscious and could perceive through his senses, in the immediate presence of the court, or so near thereto as to prevent the court from duly proceeding in the administration of justice; (2) misbehavior of its officers in their official duties; (3) disobedience to its orders, judgments, or processes.

Congress also obviously thought that all other cases which the English courts had been in the habit of summarily punishing as contempts might safely be relegated to the usual mode of punishing crimes.

Now, as the first section of the act deprived the court of the power to summarily punish a number of graver offences in the nature of contempts, and that had theretofore been summarily punished as contempts, it became necessary to make them punishable by indictment, and hence the necessity for the second section of the act.

The second section therefore provides that persons shall be punished by indictment who shall corruptly interfere with any juror, witness, or officer in any court of the United States, in the discharge of his duty, or who shall corruptly or by threats or force obstruct or impede or endeavor to obstruct or impede the due course of justice therein — that is, such acts, even though they did not occur in the presence of the court, and though the court was not conscious of them at the time they occurred. See *Ex parte Robinson*, 19 Wall. 505, 511; *Harwell* v. *State*, 10 Lea, 547.

II. The proceedings upon which the judgment of contempt was based were not in due course of law, and were not of a character upon which a valid judgment could be based, because: (1) No written specifications of the facts constituting the contempt were furnished Savin, (but when demanded

were denied,) so as to give him the opportunity of purging himself of the contempt; (2) the judgment of the court is based upon the testimony of witnesses, whereas the only valid judgment the court could render in a case of criminal constructive contempt is one based upon the answer of the defendant — either dismissing the proceeding or punishing the defendant, according as his answer either denied or confessed the alleged contempt; (3) even if it were lawful to have a trial and take testimony in this class of cases, yet it could only have been done upon an issue formed upon a specific charge in writing and an answer denying it; whereas in this case the proceedings were purely oral.

Even if the court had jurisdiction to summarily punish for the matters set out in the judgment, yet the judgment is void on account of the departure by the court from the mode of procedure in criminal contempt cases, established by the common law courts from time immemorial: a mode always followed in England and in this country, except when a different mode is prescribed by statute.

This mode was to reduce the charge to writing of some kind, (an affidavit, order to show cause, interrogatories, etc.,) specifically designating and setting out the facts constituting the alleged contempt. Then to serve a copy on the defendant and give him the opportunity of answering the charge, and then if he fully and explicitly denied the charge under oath, to dismiss the proceedings and not permit the answer to be contradicted by the testimony of others.

In this case no writing specifically setting out the facts constituting the alleged contempt was ever served upon the defendant. When he called for interrogatories they were denied him. The whole proceeding was oral, and the judgment was based on the testimony of witnesses contradicting the testimony of defendant denying the charge.

In considering the nature of proceedings leading to a judgment of contempt, the cases should be divided into two classes: (1) Those cases in which the facts necessary to base the conviction on are known to the judge or judges by their senses of seeing, hearing, etc.; (2) those cases in which the

facts necessary to base the conviction on must be brought to the knowledge of the court by the testimony of witnesses.

In the class of direct cases, from necessity and the very nature of things, the judge acts instantly on his own observation and knowledge and adjudges the party guilty of contempt, and the only writing, paper or record entry consists of the judgment and warrant of committal. In this class of cases this entire departure from the fundamental law of the land in relation to criminal proceedings is based alone on necessity, and should be carried not a step further than is necessary.

In the class of constructive cases, as a basis of the proceedings there must be some affidavit, record, interrogatories or some writing stating and specifying the facts constituting the alleged contempt on which to base the order of arrest or attachment and to which the defendant may demur, plead or answer, and when he has answered, purging himself of contempt, no evidence contradicting it can be heard. *In re Terry*, 128 U. S. 289; *Ex parte Wright*, 65 Indiana, 504, 509.

The proceeding for constructive contempt should be commenced either by a rule to show cause or by an attachment. *Whittem* v. *State*, 36 Ins. 196; and *Ex parte Wright, ubi sup.* The defendant should be allowed to answer under oath, and after he has fully and explicitly denied the facts constituting the charge specifically made against him he should be discharged and no evidence be allowed to contradict him. *Burk* v. *State*, 27 Indiana, 430; *In the matter of John Pitman*, 1 Curtis, 186; *In re May*, 2 Flippin, 562; *Ex parte Kilgore*, 3 Texas App. 247; *Ex parte Field*, 1 California, 187; *Ex parte Rowe*, 7 Cal. 181; *Ex parte Langdon*, 25 Vt. 678, 682; *S. C.* 60 Am. Dec. 296.

*Mr. Solicitor General* and *Mr. George J. Denis*, United States attorney for the Southern District of California, opposing.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

The power of the courts of the United States to punish contempts of their authority is not merely incidental to their general power to exercise judicial functions, but, as was said in *Ex parte Terry*, 128 U. S. 289, 304, where this subject was considered, is expressly recognized and the cases in which it may be exercised are defined, by acts of Congress. The judiciary act of September 24, 1789, c. 20, § 17, invests them with "power to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." 1 Stat. 83. By an act of Congress of March 2, 1831, c. 99, 4 Stat. 487, "declaratory of the law concerning contempts of court," it was enacted:

"That the power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases except the misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness or any other person or persons, to any lawful writ, process, order, rule, decree or command of the said courts.

"Sec. 2. That if any person or persons shall corruptly, or by threats or force, endeavor to influence, intimidate, or impede any juror, witness, or officer, in any court of the United States, in the discharge of his duty, or shall, corruptly, or by threats or force, obstruct, or impede, or endeavor to obstruct or impede, the due administration of justice therein, every person or persons, so offending, shall be liable to prosecution therefor, by indictment, and shall, on conviction thereof, be punished, by fine not exceeding five hundred dollars, or by imprisonment, not exceeding three months, or both, according to the nature and aggravation of the offence."

Section 725 of the Revised Statutes, title "The Judiciary," is in these words: "The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of

their authority : *Provided*, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

The second section of the act of 1831 is in part reproduced in § 5399 of the Revised Statutes, title "Crimes." That section is as follows: "Every person who corruptly, or by threats or force, endeavors to influence, intimidate, or impede any witness, or officer in any court of the United States, in the discharge of his duty, or corruptly, or by threats or force, obstructs or impedes, or endeavors to obstruct or impede, the due administration of justice therein, shall be punished by a fine of not more than five hundred dollars, or by imprisonment not more than three months, or both."

It is contended that the substance of the charge against the appellant is, that he endeavored, by forbidden means, to influence or "impede" a witness in the District Court from testifying in a cause pending therein, and to obstruct or impede the due administration of justice, which offence is embraced by § 5399, and, it is argued, is punishable only by indictment. Undoubtedly, the offence charged is embraced by that section, and is punishable by indictment. But the statute does not make that mode exclusive, if the offence be committed under such circumstances as to bring it within the power of the court under § 725 ; when, for instance, the offender is guilty of misbehavior in its presence, or misbehavior so near thereto as to obstruct the administration of justice. The act of 1789 did not define what were contempts of the authority of the courts of the United States, in any cause or hearing before them, nor did it prescribe any special procedure for determining a matter of contempt. Under that statute the question whether particular acts constituted a contempt, as well as the mode of proceeding against the offender, was left

to be determined according to such established rules and principles of the common law as were applicable to our situation. The act of 1831, however, materially modified that of 1789, in that it restricted the power of the courts to inflict summary punishments for contempt to certain specified cases, among which was misbehavior in the presence of the court, or misbehavior so near thereto as to obstruct the administration of justice. *Ex parte Robinson*, 19 Wall. 505, 511. And although the word "summary" was, for some reason, not repeated in the present revision, which invests the courts of the United States with power "to punish by fine or imprisonment, at the discretion of the court, contempts of their authority" in certain cases defined in § 725, we do not doubt that the power to proceed summarily, for contempt, in those cases, remains, as under the act of 1831, with those courts. It was, in effect, so adjudged in *Ex parte Terry*, above cited.

The question then arises, whether the facts recited in the final order in the District Court as constituting the contempt — which facts must be taken in this collateral proceeding to be true — make a case of misbehavior in the presence of that court, or misbehavior so near thereto as to obstruct the administration of justice therein. There may be misbehavior in the presence of a court amounting to contempt, that would not, ordinarily, be said to obstruct the administration of justice. So there may be misbehavior, not in the immediate presence of the court, but outside of and in the vicinity of the building in which the court is held, which, on account of its disorderly character, would actually interrupt the court, being in session, in the conduct of its business, and consequently obstruct the administration of justice.

Flores, we have seen, was in attendance upon the court in obedience to a subpoena commanding him to appear as a witness in behalf of one of the parties to a case then being tried. While he was so in attendance, and when in the jury-room, temporarily used as a witness-room, the appellant endeavored to deter him from testifying in favor of the government in whose behalf he had been summoned; and, on the same occasion, and while the witness was in the hallway of the court

room, the appellant offered him money not to testify against Goujon, the defendant in that case. Was not this such misbehavior upon the part of the appellant as made him liable, under § 725, to fine or imprisonment, at the discretion of the court? This question cannot reasonably receive any other than an affirmative answer. The jury-room and hallway, where the misbehavior occurred, were parts of the place in which the court was required by law to hold its sessions. It was held in *Heard* v. *Pierce*, 8 Cush. 338, 341, that "the grand jury, like the petit jury, is an appendage of the court, acting under the authority of the court, and the witnesses summoned before them are amenable to the court, precisely as the witnesses testifying before the petit jury are amenable to the court." Bacon, in his essay on Judicature, (No. LVI,) says: "The place of justice is an hallowed place; and therefore not only the bench, but the footpace and precincts and purprise thereof ought to be preserved against scandal and corruption." We are of opinion that, within the meaning of the statute, the court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses; and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed "upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form," *Ex parte Terry*, 128 U. S. 289, 309; whereas, in cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished. 4 Bl. Com. 286. But this difference in procedure does not affect the question as to whether particular acts do not, within the meaning of the statute, constitute misbehavior in the presence of the court. If, while Flores was in the court-room, waiting to be called as a witness, the appellant had at-

tempted to deter him from testifying on behalf of the government, or had there offered him money not to testify against Goujon, it could not be doubted that he would have been guilty of misbehavior in the presence of the court, although the judge might not have been personally cognizant at the time of what occurred. But if such attempt and offer occurred in the hallway just outside of the court-room, or in the witness-room, where Flores was waiting, in obedience to the subpœna served upon him, or pursuant to the order of the court, to be called into the court-room as a witness, must it be said that such misbehavior was not in the presence of the court? Clearly not.

We are of opinion that the conduct of the appellant, as described in the final order of the District Court, was misbehavior in its presence, for which he was subject to be punished without indictment, by fine or imprisonment, at its discretion, as provided in § 725 of the Revised Statutes. And this view renders it unnecessary to consider whether, as argued, the words "so near thereto as to obstruct the administration of justice" refer only to cases of misbehavior, outside of the court-room, or in the vicinity of the court building, causing such open or violent disturbance of the quiet and order of the court, while in session, as to actually interrupt the transaction of its business.

It is, however, contended that the proceedings in the District Court were insufficient to give that court jurisdiction to render judgment. This contention is based mainly upon the refusal of the court to require service of interrogatories upon the appellant, so that, in answering them, he could purge himself of the contempt charged The court could have adopted that mode of trying the question of contempt, but it was not bound to do so. It could, in its discretion, adopt such mode of determining that question as it deemed proper, provided due regard was had to the essential rules that obtain in the trial of matters of contempt.

This principle is illustrated in *Randall* v. *Brigham*, 7 Wall. 523, 540, which was an action for damages against the judge of a court of general jurisdiction, who removed the plaintiff from his office as an attorney at law, on account of malprac-

tice and gross misconduct in his office. One of his contentions was that the court never acquired jurisdiction to act in his case, because no formal accusation was made against him, nor any statement of the grounds of complaint, nor a formal citation against him to answer them. The court, after observing that the informalities of the notice did not touch the question of jurisdiction, and that the plaintiff understood from the notice received the nature of the charge against him, said: "He was afforded ample opportunity to explain the transaction and vindicate his conduct. He introduced testimony upon the matter, and was sworn himself. It is not necessary that proceedings against attorneys for malpractice, or any unprofessional conduct, should be founded upon formal allegations against them. Such proceedings are often instituted upon information developed in the progress of a cause; or from what the court learns of the conduct of the attorney from its own observation. Sometimes they are moved by third parties upon affidavit; and sometimes they are taken by the court upon its own motion. All that is requisite to their validity is that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made, and opportunity afforded him for explanation and defence. The manner in which the proceeding shall be conducted, so that it be without oppression or unfairness, is a matter of judicial regulation." So, in the present case, if the appellant was entitled, of right, to purge himself, under oath, of the contempt, that right was not denied to him; for it appears from the proceedings in the District Court, made part of the petition for *habeas corpus*, not only that he was informed of the nature of the charges against him by the testimony of Flores, taken down by a sworn stenographer at the preliminary examination, but that he was present at the hearing of the contempt, was represented by counsel, testified under oath in his own behalf, and had full opportunity to make his defence.

Our conclusion is that the District Court had jurisdiction of the subject matter, and of the person, and that irregularities, if any, occurring in the mere conduct of the case, do not affect

the validity of its final order. Its judgment, so far as it involved mere errors, cannot be reviewed in this collateral proceeding, and must be

*Affirmed.*