PUGET SOUND ELECTRIC RY. v. MATSON.

(Circuit Court of Appeals, Ninth Circuit. May 6, 1918.)

No. 3092.

1. APPEAL AND ERROR ☞1002—REVIEW—VERDICT.
    A verdict on conflicting evidence will not be reviewed on appeal.

2. APPEAL AND ERROR ☞1060(4)—HARMLESS ERROR—MISCONDUCT OF COUNSEL.
    Though plaintiff's counsel was guilty of misconduct in telling defendant's witness that he would have him punished for perjury, if he testi-

fied as he had on a previous trial, yet, where the witness did not change his testimony, and the jury disregarded its finding for plaintiff, the verdict need not be set aside because of the improper conduct of plaintiff's counsel.

3. TRIAL ⬤═295(10)—INJURIES TO PASSENGERS—INSTRUCTION ASSUMING FACTS.
   Where defendant asserted that plaintiff was not a passenger at the time of his injuries, a charge on the respective degrees of care to be exercised by passenger and carrier *held*, in view of the remainder of the charge, not to take that contention from the jury by assuming that plaintiff was a passenger.

4. CARRIERS ⬤═321(6)—INJURIES TO , PASSENGERS—ACTIONS—INSTRUCTIONS.
   In an action for injuries received when plaintiff attempted to board defendant's car, where it was defendant's contention that plaintiff was not accepted as a passenger, and that car was moving at the time, instruction charging that if defendant did not encourage plaintiff to board the car, and he "flew" at the side of the car, defendant only owed him the duty to refrain from willfully injuring him, *held* not improper by reason of the use of the word "flew."

In Error to the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Alexander Matson against the Puget Sound Electric Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank D. Oakley, of Tacoma, Wash., for plaintiff in error.

Ralph Woods and Charles L. Wescott, both of Tacoma, Wash., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Plaintiff below, Matson, was injured by an electric train operated by the defendant below. Matson recovered a verdict. He testified: That at about 11 o'clock at night, when the train came into Pacific City bound for Tacoma, it stopped an instant at the depot and let one man off; that he was standing at the lower end of the depot when the train came in and stopped; that he started to go up to board the car, grabbed the handhold with his right hand and was going to step on the car, when the train started with a jerk, pulled him, overbalanced him, threw him around, and the wheel went sideways across his foot; that he saw no conductor; that when the train stopped before the accident he was standing close to a turnstile, which was at the end of the platform in front of the station house; that he did not run to catch the car; that the vestibule was open; that he saw a man when he came from the car, but he could not say what step the man got off of; that he passed the man near the turnstile; that when he boarded the car the door was opposite the door of the depot.

[1] There was evidence by the defendant to the effect that Matson was seen running on the road toward the depot about the middle of the street at the time that the train was standing at the depot. But, at most, there was a conflict of evidence, and the verdict upon the facts will not be disturbed by this court.

[2] The defendant asks reversal because of the misconduct of counsel for plaintiff during the trial. The defendant called a witness named

Shull, who testified to the effect that just before the accident he saw Matson running in the road, about the middle of the street, toward the depot. We quote from the redirect examination carried on by counsel for defendant:

"Q. Now, did you have a conversation this morning with Mr. Woods in reference to what would happen to you if you testified this morning? A. Mr. Woods spoke to me in the hall out there this morning. Q. What did he say with reference to your appearing here as a witness? A. He said, if I lied like I did the other time, he would send me to the penitentiary. Q. When did he tell you that? A. About an hour ago. Q. He told you, if you lied like you did the other time, he would have you arrested for perjury, didn't he? A. Yes, and have me sent to the penitentiary."

The witness was then excused, and the following colloquy was had:

"The Court (addressing Mr. Woods): If he lied the other time, why have you not had him arrested before this time?

"Mr. Woods: Your honor will remember that in the other trial (interrupted)—

"Mr. Oakley: I do not think it is necessary to have any explanation.

"The Court: If you made that remark in good faith (interrupted)—

"Mr. Woods: I made that remark in good faith.

"The Court: Why didn't you have him arrested when this trial came off? Why were you holding it over him when he was a witness in this case?

"Mr. Woods: The testimony is practically the same now as it was before, that he stood there 50 or 75 feet away; he testified that he recognized the witness; I understood the witness to testify in the other trial that he recognized this man (interrupted)—

"The Court: I did not ask you to rehash this testimony, but if you thought he had perjured himself, and if you were able to prove it, it would seem to be your duty to start that prosecution, and not try to influence his testimony in this trial by talking to him about it.

"Mr. Woods: Well, all I want is the truth, and I cannot see where he is telling the truth.

"Mr. Oakley: It is an attempt to intimidate a witness.

"(Defendant rests.)"

We are of one mind in condemning the conduct of counsel for Matson. It was highly discreditable, and the authority of the court might with all fitness have been invoked to punish in appropriate manner. Savin, Petitioner, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150. But there is nothing to warrant the belief that the witness was affected by the threat of counsel. His testimony as to the material points in the case was positive, and directly in support of the theory advanced by defendant. The jury weighed the credibility of the witness, and evidently did not believe his statements. As no direct prejudice to the rights of the defendant appears, we are not prepared to say that as a matter of public policy the District Court erred in not setting aside the verdict of the jury.

[3] Error is assigned because the court, in the course of an instruction explaining that it was the duty of a passenger to exercise ordinary care for his own safety when he attempts to board a train, said:

" * * * But the passenger, and the plaintiff in this case, by the same rule is not held to that high degree of care which the carrier was bound to use."

It is argued that by the instruction the plaintiff was to be considered a passenger, whereas defendant denied that he was in such relationship to it. But the force of such a contention is lost when the whole instruction is examined, for by its terms the court expressly told the jury that before applying the rules of degree of care it was necessary for them to find that the plaintiff had become a passenger, and that before he could be considered a passenger he must have either mounted upon the train, or been in such a position that by his conduct it was shown that he desired to board the train, and that he was either seen by the agents of the carrier operating the train, or that his actions were such that, if they were vigilant, they should realize that he desired to take the train. Furthermore, after the court concluded its main charge, and defendant had excepted to the possible assumption by the court that the plaintiff was a passenger, the court said to the jury that he "did not mean in any way to intimate that the plaintiff was a passenger; whether the plaintiff was a passenger or not, he was bound to exercise ordinary care for his own safety." We think this removed all chance of misunderstanding.

[4] The court also charged that if the train were moving, and the vestibule were closed, and there was no invitation on the part of the defendant company to encourage the plaintiff in any way to board the car, and he "flew" at the side of the car, defendant did not owe him the exercise of ordinary degree of care, and only owed him the duty of refraining from willfully and purposely injuring him. The defendant criticized the statement of the court that, if the plaintiff "flew" at the side of the car, defendant owed him no duty, except as explained. We cannot think, however, that there could have been any prejudice to the defendant by the use of the word "flew." The meaning of the court was evidently that, if the plaintiff ran for the car after the vestibule was closed and the train was moving, the defendant carrier was relieved of the obligation to exercise that degree of care which was imposed upon it, if he had been a passenger seeking to board the train when it was standing still.

When the whole charge of the court is considered, we believe it fairly stated the law, and that none of the assignments of error is well founded. The judgment is therefore affirmed.

Affirmed.