## COLL v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. September 25, 1925.)

No. 1689.

Contempt ⬤⧉12—Information held insufficient to charge criminal contempt.

An information alleging that defendant, at an interview four miles from the place of holding federal court, at a time when the court was not in session, attempted to corrupt and intimidate a person who had been a witness before the grand jury and was intended to be used by the government as a witness on the trial of indictments found, but who was not under subpœna, held not to charge a criminal contempt, punishable by the court under Judicial Code, § 268 (Comp. St. § 1245), providing that the power of the national courts to punish for contempt "shall not be construed to extend to any cases except the misbehaviour of any person in their presence, or so near thereto as to obstruct the administration of justice" and certain other cases which are irrelevant.

Bingham, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Porto Rico; Odlin, Judge.

Information by the United States against Victor Coll y Cuchi for criminal contempt. From a judgment adjudging defendant in contempt, he brings error. Reversed and remanded.

Francis H. Dexter, of San Juan, Porto Rico, for plaintiff in error.

John L. Gay, U. S. Atty., and Burton G. Henson, Asst. U. S. Atty., both of San Juan, Porto Rico.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is a writ of error, challenging a judgment of the District Court of the United States for Porto Rico, on an information for criminal contempt filed on March 13, 1923, against the plaintiff, Dr. Victor Coll y Cuchi (herein abbreviated to Dr. Coll), his brother Cayetano, a lawyer, and two other defendants. In the view we take of the case, the material facts are within narrow compass; but the record is bulky, over 200 pages.

Felix Torres, referred to in the government's brief as "an acknowledged bootlegger," and who appears in the record also to have been under indictment in the court below for attempting to bribe a government official, had received from the United States attorney a written promise of immunity. He thereupon had testified before the grand jury in two cases, under which two indictments for conspiring to violate the National Prohibition Act[1] were returned in October and November in 1922 against the plaintiff in error and other alleged "prominent citizens of Porto Rico." Thereupon, an interview took place on December 7, 1922, between Torres and Dr. Coll at the latter's house.

Preliminary to this interview, Dr. Coll procured the presence at his house of two members of the insular police force, in order that they should, hidden in an adjoining room, hear what took place between him and Torres. This is not the normal procedure of an accused guilty person seeking to corrupt a government witness. After the interview, Dr. Coll and the two detectives prepared a written statement of their version of what occurred. This was to the effect that Torres confessed that before the grand jury he had testified falsely under promise of immunity from the United States attorney, and in order to get himself free from his own criminal troubles, excusing himself on the ground that Dr. Coll and other persons indicted were big and influential, and could easily get off, whereas he was small

[1] Comp. St. Ann. Supp. 1923, § 10138¼ et seq.

and saw no way to relieve himself except by yielding to pressure from the government officials.

The United States attorney left Porto Rico for the United States on the morning of this interview. A few days after the interview, Cayetano, brother of Dr. Coll, who had been in the United States, returned and learned of the situation. He promptly interviewed the assistant United States attorney, gave him a copy, or a translation of a copy, of the statement of the interview with Torres that he had obtained from his brother, asserted his brother's innocence, and sought, by using this declaration of confessed perjury by Torres, to have the prosecution stopped. His attempt was highly unsuccessful. The United States attorney regarded the attempt to get a confession of perjury from an indicted witness to whom immunity had been promised as a criminal encroachment upon his preserves. Thereupon he filed a long information in criminal contempt against both brothers, Coll y Cuchi, the chief of police, Bennett, and the head of the information bureau, Harding, who had permitted the detectives to attend the interview at Dr. Coll's house,—charging them with "corrupting and tampering with Felix Torres, a government witness." Most of this document is highly colored, and it is replete with allegations legally irrelevant. The gist of the charge of criminal contempt, if any such charge is legally stated, is found in the following account of the alleged substance of the interview between Dr. Coll and Torres. The allegation is that Dr. Coll then said to Torres:

"What have you declared before the grand jury? I know all. You may be sure because I stand well at the Fortaleza. I am going to give you some information. Your protector, Mr. Wells (meaning the undersigned United States attorney), is going to stay in New York and Mr. Odlin (referring to the judge of this court) is on the outs with him, and you are going to be left. There is a method by which you can save yourself."

The information then continues:

"That the witness, Felix Torres, asked the said defendant, Dr. Victor Coll y Cuchi, what it was, and the said defendant, Dr. Victor Coll y Cuchi, replied, in substance, as follows: 'Mr. Odlin (referring to the judge of this court) wants to catch Mr. Juan B. Huyke (referring to the commissioner of education of Porto Rico and at this date, March 13, 1923, Acting Governor of Porto Rico) and involve him in the Yabucoa mat-

ter, because Mr. Huyke is a toady, and he (Odlin) does not care for him, and as the brother-in-law of Juan B. Huyke, Cristobal Colon, was one of those who put up the capital for the Yubacoa contraband, you will put yourself in right with Mr. Odlin by declaring that Mr. Huyke had intimate connection with the Yubacoa matter,' and that the said Felix Torres answered the said Dr. Victor Coll y Cuchi by telling him that he knew of the Yubacoa matter only by reference, and that it was not possible for him to testify in this matter. That the said Dr. Victor Coll y Cuchi then repeated that Mr. Wells (referring to the United States attorney for Porto Rico) had gone for good, and that the witness should get in right with Judge Odlin. That divers and sundry other statements were made at said time by the said Dr. Victor Coll y Cuchi to the said witness, Felix Torres, of the same kind and nature, which this complainant is unable to give in form or substance, but of a nature to corrupt and tamper with said witness, and to intimidate and put him in fear."

To this information Dr. Coll demurred, on the ground that it did not set forth facts constituting misbehaviour in the presence of the court or so near thereto as to obstruct the administration of justice. The demurrer was overruled, an answer under oath filed, and the defendant thereupon moved for a jury trial. This also was denied. A long trial ensued before Judge Odlin, resulting in a finding of not guilty as to the other defendants, and a finding of "guilty as charged in this information" as to Dr. Coll, with a sentence of 60 days in jail and to pay all costs.

Whether this finding against the plaintiff in error by the court below was a finding of attempted subornation of perjury, his opinion leaves us in doubt. But, in the view we take of the controlling factors in the case, it is unnecessary to determine the exact scope and legal interpretation of the information and the court's finding thereon.

The power of the federal District Court to punish for contempt is limited by Act March 2, 1831 (4 St. 487), now section 268 of the Judicial Code (R. S. § 725 [Comp. St. § 1245]), as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehaviour of any person in their presence, or so near

thereto as to obstruct the administration of justice, the misbehaviour of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

Section 2 of Acts 1831 is, now slightly changed, section 135 of the Penal Code (Comp. St. § 10305), as follows:

"Whoever corruptly, or by threats or force, or by any threatening letter or communication, shall endeavor to influence, intimidate, or impede any witness, in any court of the United States or before any United States commissioner or officer acting as such commissioner, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or officer acting as such commissioner, in the discharge of his duty, or who corruptly or by threats or force, or by any threatening letter or communication, shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

It is elementary that the legislative purpose must be inferred from the entire act. The two sections are to be read together. Section 2 covers misbehaviour in obstructing the administration of justice not punishable as contempts under section 1. The United States attorney for Porto Rico concedes that the alleged offenses of Dr. Coll might have grounded indictments and prosecution under section 2; but his extraordinary contention is that it was necessary to proceed in such fashion as to deprive the alleged wrongdoer of a jury trial. In his brief it is stated:

"We are impelled to close this paragraph by saying that the public character, notoriety, and influence of those charged with contempt in this case was of such a nature that a reasonable man, knowing the situation as it then existed, would have great and serious doubt whether a jury could be found within the jurisdiction of the court below that would convict the defendants below, even for the grossest contempt."

This amounts to urging usurpation of jurisdiction, in order to achieve a conviction thought impossible under the forms of law provided by Congress. We do not accept any such proposition.

Assuming, but not deciding, that the information sufficiently alleges—and that there was evidence supporting the allegation—of improper dealing by the defendant with Torres, the prospective government's witness, the question is whether such acts fall within the scope of section 268 as being "so near" to the court "as to obstruct the administration of justice." We think this question must be answered in the negative. The court was not in session. Torres had not been summoned. He was "a government witness" only in the sense that he had been given a written promise of immunity by the United States attorney, in consideration of his testifying before the grand jury, and of prospective testimony at the trial of the indictments procured, in part at least, by his testimony. Whether the interview which took place was initiated by Torres, as Dr. Coll claimed, or by the plaintiff in error, as the government claimed, is immaterial. Admittedly, Torres went of his own volition to Dr. Coll's house, something like four miles from the courthouse. It is unnecessary to enlarge on this aspect of the case, for the court below, after reviewing certain cases, which it regarded as conclusive on the point, said: "My construction of these decisions is that, even if Victor Coll y Cuchi had gone to the house of Felix Torres in Caguas, twenty miles away, and had there sought to intimidate, or frighten, or bribe, or tamper with the said Torres as a witness for the United States, he would equally have been guilty of violating the law governing this matter of contempt."

In our view this construction falls little short of nullifying the act of 1831. The genesis of that act is elaborately stated in an article by Felix Frankfurter and James M. Landis entitled "Power to Regulate Contempts," 38 Harvard Law Review 1010, 1023, et seq. It was sustained by the United States Supreme Court in the case of Ex parte Robinson, 19 Wall. 505, 22 L. Ed. 205, Mr. Justice Field saying:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the Act of Congress of March 2, 1831. The act, in terms, applies to all courts;

whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Circuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted. It limits the power of these courts in this respect to three classes of cases: (1) Where there has been misbehaviour of a person in the presence of the courts, or so near thereto as to obstruct the administration of justice; (2) where there has been misbehaviour of any officer of the courts in his official transactions; and (3) where there has been disobedience or resistance by any officer, party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the courts. As thus seen, the power of these courts in the punishment of contempts can only be exercised to insure order and decorum in their presence, to secure faithfulness on the part of their officers in their official transactions, and to enforce obedience to their lawful orders, judgments, and processes."

The court below apparently relied chiefly on the Savin Case, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150, and the Shipp Case, 203 U. S. 563, 27 S. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265. The Shipp Case is not in point, for that case involved contempt of the Supreme Court whose powers have not yet been held limited by the act of 1831. See the language of Justice Field, supra. Nor does the Savin Case support the construction given below. The court simply held that Savin's attempt to bribe a witness subpœnaed and in the courthouse was contempt within the terms of the statute.

In the Cuddy Case, 131 U. S. 280, 9 S. Ct. 703, 33 L. Ed. 154, decided on the same day as the Savin Case, and in which Cuddy was held in contempt, the charge was that he approached a juror. The case came up on habeas corpus, and the court held that there was nothing in the record to show that the court below erred in refusing the writ. The court guarded itself against any implied inconsistency with the Savin decision by the following statements:

"It is stated in the brief of appellants' counsel, and the statement was repeated at the bar, that the difference between the Savin Case, just determined (131 U. S. 267 [9 S. Ct. 699, 33 L. Ed. 150]), and the present case, is, that the misbehaviour constituting the contempt with which Savin is charged occurred in the court building and while the court was in session; whereas, the misbehaviour with which Cuddy is charged did not occur in the court building, nor, so far as the record of the District Court shows, while the court was in session. It was assumed in argument that, under no view of the facts, could the misbehaviour of Cuddy be deemed to have occurred in the presence of the court or so near thereto as to obstruct the administration of justice, and therefore his offense, if punishable at all, was punishable only by indictment. But both the petition for habeas corpus and the record of the District Court are silent as to the particular locality where the appellant approached McGarvin, with a view of improperly influencing his actions in the event of his being sworn as a juror in the case of United States v. Young. That which, according to the finding and judgment, the appellant did, if done in the presence of the court—that is, in the place set apart for the use of the court, its officers, jurors, and witnesses—was clearly a contempt, punishable, as provided in section 725 of the Revised Statutes, by fine or imprisonment, at the discretion of the court, and without indictment."

"Unless, therefore, the want of jurisdiction, as to subject-matter or parties, appears, in some proper form, every intendment must be made in support of the judgment of a court of that character. The District Courts of the United States, invested with power to punish, without indictment, and by fine or imprisonment, at their discretion, contempts of their authority, are none the less superior courts of general jurisdiction, because the statute declares that such power to punish contempts 'shall not be construed' to extend to any cases except misbehaviour in the presence of the court, misbehaviour so near thereto as to obstruct the administration of justice, and disobedience or resistance to its lawful writ, process, order, rule, decree, or command. Rev. Stat. § 725. The only effect of this limitation is to narrow the field for the exercise of their general power, as courts of superior jurisdiction, to punish contempts of their authority."

The only decision of the Supreme Court, which even arguably lends any support to the government's contention, is Toledo Newspaper Co. v. United States, 247 U. S. 402, 38 S. Ct. 560, 62 L. Ed. 1186. In that case

a bare majority of the Supreme Court held that the District Court might punish as contempt newspaper publications concerning injunction proceedings, tending under the circumstances to create the impression that a particular decision would evoke public suspicion of the judge's integrity and fairness, and bring him into public odium, and would be met by public resistance, and also tending, under the circumstances, to provoke such resistance in fact. But that case on the facts is plainly distinguishable from the one at bar. See the elaborate review of the facts by the District Court in 220 F. 458, and in the Court of Appeals in 237 F. 986. It is also difficult to reconcile some expressions in the opinion with the recent unanimous holding of the Supreme Court in Michaelson v. United States, 266 U. S. 42, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451, decided October 20, 1924.

In the Michaelson Case, the provisions in the Clayton Act (38 Stat. 730) for a jury trial in certain classes of contempt have been held constitutional, overruling the court below. 291 F. 940.

We may observe, generally, that it is now settled by decisions of the highest court in the land that the broad, almost unlimited, power to punish summarily for contempt, asserted by many courts, may constitutionally be, and has been, limited by legislative enactment. It is now beyond question that the Act of 1831 (Judicial Code, § 268) and sections 21, 22, of the Clayton Act of October 15, 1914 (38 Stat. 738 [Comp. St. §§ 1245a, 1245b]) are, in the federal courts, valid restrictions on powers which many courts have asserted as inherent in all real courts. Cf. Merchants' S. & G. Co. v. Board of Trade, 201 F. 20, 26, 29, 120 C. C. A. 582.

Another recent and significant decision, showing the critical care with which the Supreme Court of the United States is now guarding this vitally necessary, but highly dangerous, power to punish for contempt, is Cooke v. United States, 267 U. S. 517, 45 S. Ct. 390, 69 L. Ed. 767, decided April 13, 1925. All the implications of this latest decision of the Supreme Court concerning criminal contempt make for the construction that we give to the statute of 1831. Cf. also Craig v. Hecht, 263 U. S. 255, 44 S. Ct. 103, 68 L. Ed. 293; Ex parte Hudgings, 249 U. S. 378, 39 S. Ct. 337, 63 L. Ed. 656; 11 A. L. R. 333.

In the case at bar the demurrer to the information should have been sustained. But, if we consider the case made on the evidence adduced at the trial, the government's contention is even more untenable. The acts complained of, right, as Dr. Coll claimed and supported by testimony, or wrong, as the government claimed and supported by very doubtful evidence, were not so near as to obstruct the administration of justice.

Our conclusion on this point makes it unnecessary to discuss other assignments of error. But it is proper to add that the decision of the Supreme Court in Cooke v. United States, supra, makes it at least doubtful whether the judge who heard this case was not disqualified. Cf. Cornish v. United States (C. C. A.) 299 F. 283. And we also should add that, as this was a case of criminal contempt (Gompers v. United States, 233 U. S. 604, 34 S. Ct. 693, 58 L. Ed. 1115, Ann. Cas. 1915D, 1044), it is far from clear that there was legally competent evidence warranting the findings of fact reached by the court below.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

BINGHAM, Circuit Judge, dissents.