## PESQUERA v. UNITED STATES.

(Circuit Court of Appeals. First Circuit. January 3, 1926.)

No. 1633.

1. Contempt ⊗═►66(1)—Judgment in contempt proceeding is reviewable only by writ of error.

Judgment in criminal contempt proceeding, under Judicial Code, § 268 (Comp. St. § 1245), is reviewable by writ of error only.

2. Contempt ⊗═►60(3)—Evidence held to sustain finding that grand juror and prohibition director were guilty of contempt.

Evidence that grand juror called on prohibition director several times relative to appointment as prohibition agent while charges against director were being considered by grand jury *held* to sustain finding that both parties were guilty of contempt.

Anderson, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Porto Rico; Arthur F. Odlin, Judge.

Contempt proceeding by the United States against Mariano Pesquera and another. Both defendants were adjudged guilty, and the named defendant brings error. Affirmed.

Hugh R. Francis, of San Juan, Porto Rico, for plaintiff in error.

John L. Gay and Burton G. Henson, both of San Juan, Porto Rico, for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judge.

JOHNSON, Circuit Judge. This is a writ of error to the District Court of the United States for the District of Porto Rico, in which the reversal of a judgment upon an information for contempt is sought. The facts, briefly stated, are as follows:

Pesquera, the plaintiff in error, was the prohibition director for the island of Porto Rico. His office was in the same building in which the District Court was held, and directly above the grand jury room. Arthur G. Mayo was sworn in as a member of the grand jury on June 12, 1922. On July 11th following he made application to Pesquera for appointment as a prohibition agent under him, and thereafter continued to serve upon the grand jury until it was discharged in the latter part of October of that year.

Previous to his application the grand jury some time in June, 1922, had considered charges against Pesquera. After the return of the latter from the United States, where he had been during the month of June, he

was informed that these charges had been made, and told that they were not sufficient to authorize his indictment. Later other charges were brought against him and investigated by the grand jury, and on October 19, 1922, that body voted to indict him, and the indictment was finally passed upon and returned into court October 21st. While the charges against him were being investigated, Mayo, who was known to Pesquera to be a grand juror, was a frequent caller at his office.

Upon information filed by the district attorney, Pesquera and Mayo were cited to appear before the judge of the District Court and a rule to show cause was issued, to which both answered, and a hearing was had, which lasted four days, at which both testified, and both were found guilty of contempt.

In their answers and in their testimony they admitted that Mayo called upon Pesquera while charges against the latter were under investigation by the grand jury, but claimed that these calls were made for the purpose, on the part of Mayo, to find out whether his application had met with approval at Washington, as he had been told by Pesquera that his application had been forwarded there for that purpose one week after he had filed it, and that Pesquera had nothing more to do with it.

It was admitted that the statement made by Pesquera to Mayo that he had forwarded his application was not true, and that it was not forwarded to Washington until October 19th, the day upon which a vote was taken in the grand jury upon the indictment of Pesquera. It also appeared in testimony that when this vote was taken Mayo challenged the result announced, and claimed that the vote against the indictment should have been one more than was announced; but, upon being told that that would make no difference with the result, he made no further objection.

Mayo also testified that on October 21st, before a session of the grand jury held that evening, at which the indictment was finally passed upon, he was told by Pesquera that his appointment as a prohibition agent had been made. This information was false, as his appointment was not made until October 31, 1922, and a commission was not issued until November 2d following.

The power of a District Court of the United States to punish for contempt, and the acts which constitute such contempt, have been fixed by Congress in section 725, U. S. Revised Statutes (section 268, Judicial Code [Comp. St. § 1245]), which, so far as applicable, is as follows:

"The said court shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice."

[1] This, being a proceeding for criminal contempt, is reviewable only by writ of error. Bessette v. W. B. Conkey Co., 194 U. S. 324, 338, 24 S. Ct. 665, 48 L. Ed. 997; Grant v. United States, 227 U. S. 74, 78, 33 S. Ct. 190, 57 L. Ed. 423.

The only question presented by the record before us, therefore, is whether there was sufficient competent evidence to sustain the finding of guilt made by the District Judge.

In Bessette v. W. B. Conkey Co., supra, the court said:

"Such review must, according to the settled law of this court, be by writ of error. Walker v. Dreville, 12 Wall. 440 [20 L. Ed. 429]; Deland v. Platte County, 155 U. S. 221 [15 S. Ct. 82, 39 L. Ed. 128]; Bucklin v. United States, 159 U. S. 680, 682 [16 S. Ct. 182, 40 L. Ed. 304, 305]. On such a writ only matters of law are considered. The decision of the trial tribunal, court or jury, deciding the facts, is conclusive as to them."

See, also, Sona et al. v. Aluminum Castings Co., 214 F. 936, 942, 131 C. C. A. 232; Schwartz v. United States, 217 F. 866, 870, 133 C. C. A. 576; Oates v. United States, 233 F. 201, 206, 147 C. C. A. 207.

[2] After a careful study of all the testimony which was heard by the judge below, who had the advantage of seeing the witnesses and judging their credibility, we cannot say as a matter of law that the testimony and reasonable inferences to be drawn therefrom were not sufficient to sustain a finding that both Mayo and Pesquera were guilty of contempt.

The failure of Pesquera to forward Mayo's application to Washington, while he led the latter to believe that it had been done, furnished ground for belief that his purpose in so doing was to keep in touch with Mayo, thus affording opportunity for frequent visits of Mayo to his office while the matter of his indictment was under consideration, and also of causing Mayo to feel indebtedness to him. That the application was not forwarded until the very day upon which a vote upon his indictment was taken by the grand jury, and that Pesquera told Mayo upon October 21st, before the grand jury had finally disposed of the indictment against

him, that he had been appointed, lend strength to the belief that Pesquera hoped and intended to influence, not only Mayo, but through him other members of the grand jury, to vote against his indictment.

Nothing is more essential to the administration of justice in our courts than that juries should approach the performance of their duties totally unbiased by any personal interest or desire to serve the interests of another.

The presiding judge in his opinion evinced a desire and a purpose to be entirely fair with the respondents, and there is nothing in the case pointing to any arbitrary action upon his part. With the opportunities afforded him, he was in a vastly better position than this court to pass upon the evidence presented, and to make such reasonable inferences as might be legitimately drawn therefrom.

The judgment of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). I agree that on this writ of error all questions of credibility and weight of evidence are concluded by the finding of the trial court. But it is a criminal case. Gompers v. U. S., 233 U. S. 604, 610, 611, 34 S. Ct. 693, 58 L. Ed. 1115, Ann. Cas. 1915D, 1044. To sustain a conviction, there must be evidence that Pesquera was guilty of some act constituting an attempt corruptly to influence Mayo, a grand juror, either in the court, or so near thereto as to obstruct the administration of justice. R. S. § 725.

The proceedings were extraordinarily loose. The information ran against Mayo and Pesquera jointly. At the trial, much of the evidence was nothing but rumor and hearsay. In the "opinion and order" of the court below—some 24 pages long—can be found no finding of any act of Pesquera's constituting an alleged attempt to corrupt. There was no separate order or finding of any described act of wrongdoing. Pesquera was simply adjudged "guilty of contempt" and sentenced to 40 days in jail and to one-half the costs.

Resolving all doubts in favor of the decision below, and against Pesquera, the indisputable and salient facts are as follows:

Mayo became a member of the grand jury on June 12, 1922. Pesquera was then, and until July 6 or 7, absent on a trip to the United States. A day or two after his return, Mayo saw him regarding a position as prohibition agent. Pesquera told him to write him a letter, and on or about July 11

Mayo made a written application. There is no evidence to control Pesquera's testimony that at that time he did not know that Mayo was a member of the grand jury, and that he (Pesquera) had been or was being investigated by the grand jury. He had a flood of such applications, apparently about 500. He told Mayo, as he apparently did other applicants, that his application would be forwarded and passed upon in Washington, and that he would recommend him for a temporary position. His statement in that regard was false. Whether this method of disposing of job hunters was or was not morally excusable, it was no attempt by Pesquera to influence an applicant who he did not then know was a member of the grand jury. So far there plainly was no misconduct.

Later, apparently in September or October, he did know that Mayo was a grand juror and that the grand jury was investigating him, and he allowed his untrue representation to Mayo—to the effect that his application had been forwarded—to stand when Mayo from time to time came into his office and inquired if he had yet heard from Washington. Doubtless it would have been wiser for him to have told Mayo that he had not forwarded the application, and that under the circumstances he could not deal with him as a possible appointee. If he was guilty of any crime, it was in not then telling Mayo the truth, that his application had not been forwarded, and in not warning him to keep away from his office and from him, pending Mayo's service on the grand jury. But there is no finding that thus—negatively—Pesquera attempted to corrupt Mayo. This seems to me fatal to the judgment.

The status remained unchanged until October 19. Then the grand jury voted to indict Pesquera—of what offense does not appear. This vote was taken before lunch, and immediately became known "on the street," and was telephoned to Pesquera. On the same day he sent to Washington a recommendation of Mayo's appointment, with three others. But he did not tell Mayo of this until October 21. Then he accidentally met him and told him his application had been approved. Whether this statement was intentionally mendacious, or not, is entirely immaterial. This was two days after the indictment had—as Pesquera knew—been voted. Obviously he was not then seeking to corrupt a member of the grand jury that had voted to indict him and whose term of office was expiring that same night. There is nothing

in the occurrence of October 21 to sustain a finding of guilt.

Nor do I see any significance, so far as Pesquera is concerned, in the meager, indefinite evidence to the effect that, when the vote was taken as to indicting Pesquera, "there was objection raised by Mr. Mayo that one of those sides should contain one more vote on that side." "We showed him that it would not make any difference to the final decision of that jury as regards Mr. Pesquera, if the one vote was taken from one side and put on the other." Mayo's case is not before us. Even if Mayo allowed his desire for an appointment as prohibition agent improperly to influence his conduct as a grand juror, this alone has no tendency to prove Pesquera guilty. Whether Mayo was, or was not, justified in making his application on July 11, there is, to repeat, no scintilla of evidence that Pesquera then knew that the applicant was a grand juror. And I can see nothing in his subsequent conduct indicating any purpose to influence Mayo in his conduct as a grand juror.

But, apart from the lack of any evidence of criminal misconduct, I think the case is governed by section 268 of the Judicial Code, which limits the power to punish for contempt to acts in the presence of the court "or so near thereto as to obstruct the administration of justice." Pesquera never approached Mayo or the grand jury room; he simply failed to keep him out of his own office, which was above the grand jury room. The fact that Pesquera's office was in the same building as the grand jury room, so that Mayo, after the adjournment of the grand jury, could conveniently go up there to inquire as to the fate of his application, does not bring the case within the doctrine of the Savin Case, 131 U. S. 267, 9 S. Ct. 699, 33 L. Ed. 150. Pesquera stayed in his own office, where he officially belonged. He did not invade the precincts of the grand jury. For present legal purposes, Pesquera's office was as remote from the grand jury room as though it had been in another part of the city. If a member of the grand jury, which meets in this building, called on the postmaster in his office in this building, the postmaster would not thereby be invading the court precincts. This building is no more the courthouse than it is the post office. It is both. So in San Juan.

It follows that if, in fact, Pesquera did "corruptly * * * endeavor to influence a grand juror * * * in the discharge of his duty," he should have been indicted under section 135 of the Penal Code, which was section 2 of the Act of March 2, 1831 (4 Stat. 487 [Comp. St. § 10305]). See Coll y Cuchi v. United States (C. C. A.) 8 F.(2d) 20, and cases cited. He was entitled to all the protection afforded by the regular criminal procedure. Such is the plain intent of the statute of 1831. We have no right to permit it to be nullified. Cf. Michaelson v. United States, 266 U. S. 42, 65, 66, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451; Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 444, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.