THE PEOPLE OF PUERTO RICO, Plaintiff, *v.* JUAN VALLDEJULI RODRÍGUEZ, Defendant.

No. 8. Argued June 4, 1941.—Decided July 10, 1941.

*R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for complainant. *R. Cuevas Zequeira* and *Román Díaz Collazo* for respondent.

Mr. Justice Travieso delivered the opinion of the court.

On July 13, 1940, the assistant prosecuting attorney of this court filed a complaint against Juan Valldejuli-Rodríguez, a practicing attorney, wherein substantially the following facts are alleged:

That on January 17, 1940, the hearing of the certiorari proceeding brought by Carlos M. de Castro against the Board of Commissioners of San Juan was held before this court; that on the morning following the day of the hearing, respondent called on Associate Justice De Jesús of this court, in his office in the Insular Capitol of Puerto Rico, where this Supreme Court is located, and stated to him: That in the afternoon of the day before, as respondent left the marshal's office after arguing before the court as attorney for the Board of Commissioners in said certiorari proceeding, and while he walked across the rotunda of the Capitol, a person half-hidden behind one of the columns pointed at him with a revolver and ran away when respondent drew his own weapon; that respondent did not recognize said person but was able to notice that said person wore eyeglasses; that that same afternoon a friend of his told him that on that same day he had seen the person who drew the revolver, at a café table at Stop 15 in Santurce accompanied by Dr. Carlos M. de Castro and his wife, who attended the hearing of the case.

That in making the foregoing statements respondent requested Mr. Justice De Jesús to transmit them to the Supreme Court and said magistrate did so.

That the facts stated by respondent to Mr. Justice De Jesús were false and that then and there respondent was aware of their falsity, inasmuch as the truth is that respondent, once the hearing was over, left the Capitol accompanied by Rafael Cestero, without any incident occurring between respondent and any other person.

That respondent in reporting said facts for transmission to the court, did so unlawfully and voluntarily and knowing that the facts reported by him were false, with the object of unduly influencing the Judges of the Supreme Court against the party opposite to that defended by him, that is against Dr. Carlos M. de Castro.

The prosecuting attorney alleges that the acts of respondent amount to "contemptuous and insolent conduct towards this court, tending to interrupt the free administration of justice, all this to the detriment of the prestige and dignity of this court."

In conformity with the prayer of the complaint, an order directing respondent to appear and show cause, if any he had, why he should not be punished for contempt, having been issued, respondent appeared on the 23d of July 1940, and moved to dismiss the proceeding on the following grounds:

That the complaint does not state facts sufficient to constitute a contempt of court as the same is defined and punished by Secion 145 and succeeding sections of the Penal Code:

(a) Because, as there is no positive averment showing that the facts claimed to be punishable occurred in the presence of the Supreme Court, or during a session thereof, there is lacking from the complaint an essential element in order

that the first subdivision of Section 145 of the Penal Code may be considered as violated.

(b) Because the specific intention imputed to the respondent in Paragraph VI of the complaint, of tending to unduly influence the Judges in a certain suit, and in paragraph VII, of observing contemptuous and insolent conduct towards the court, tending to interrupt the free administration of justice, are mere conclusions of law unsupported by a statement of facts, inasmuch as there is no logical relation of cause and effect between the facts averred and the conclusions stated, in conformity with the rules governing human conduct.

The decision of the preliminary questions raised by respondent in his motion to dismiss the proceeding, depends on the interpretation to be given by us to the first paragraph of Section 1 of the Law of Contempt, which characterizes as contempt of court the following acts:

"Breach of the peace, noise or other disturbance *directly* tending to interrupt its proceedings, or disorderly, contemptuous or insolent conduct towards a court or justice thereof, *in its presence or during its session and tending to interrupt its proceedings* . . . ." (Italics ours.)

Respondent maintains that the complaint is insufficient because it does not aver that the acts charged to respondent occurred *in the presence of the Supreme Court or during a session thereof.*

There is no controversy with regard to the fact that the alleged false report charged against respondent was not made while the Supreme Court was constituted as a court and holding a session. And in our opinion there can be no controversy as regards the fact that a report of false facts made by an attorney to a court in session, with the object of interrupting its proceedings or of unduly influencing the minds of the Judges, is an act constituting contempt of court.

A breach of the peace, noise or other disturbance *directly* tending to interrupt the proceedings of a court of justice must necessarily and logically occur while the court is in session, in order that such an act may constitute contempt. If such a thing occurs in the immediate presence of the court, while the same is in session, the contempt is direct and may be punished summarily; if it occurs not in its immediate presence but sufficiently near to the court in session to interrupt its proceedings, in that case the contempt is indirect or constructive, and the common practice for punishing same is to file a complaint and to give respondent an opportunity to defend himself.

In the case of *In Re Castro*, 52 P.R.R. 133, where the attorney who is respondent herein was assaulted in the corridor of this Supreme Court by reason of certain words he had just uttered in the presence of the court in session, immediately after the same was adjourned, it was held that the assault to which the attorney had been subjected amounted to a contempt of court and was punished as such.

Respondent bases his objection to the sufficiency of the complaint in the decision rendered by the Supreme Court of the United States on April 14, 1941, in the case if *Nye* v. *United States*, 85 L. ed. 733, 313 U. S. 33. We will make a detailed analysis of the question involved and decided in that case.

Before the Federal District Court for the Middle District of North Carolina there was pending an action brought by a certain Elmore, as administrator of the intestate succession of his son, to recover damages caused by reason of the death of his son as a consequence of having taken a medicine purchased from the defendant, B. C. Remedy Co. Two individuals, Nye and Mayers, through the use of liquor and persuasion, induced the plaintiff Elmore to withdraw the pending suit. Nye requested his attorney to prepare letters addressed to the district judge and to the attorney for Elmore, show-

ing the latter's desire to withdraw the suit; and furthermore to draw the final report of Elmore as administrator, to secure,. as he did, from the Probate Court his release from the obligations of said charge. Nye deposited the letters in the mail and paid the postage. All these events took place more than 100 miles from Durham, North Carolina, where the district. court was located.

After both respondents had been convicted and sentenced for contempt and the judgment had been affirmed by the circuit court, the case was taken on certiorari to the Supreme Court. The act under which respondents Nye and Mayers were convicted is Section 268 of the Judicial Code of the United States (28 U.S.C.A., sec. 385), which is applicable only to federal courts, and reads thus:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority. Such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any such officer, or by any party,. juror, witness, or other person to any lawful writ, process, order,. rule, decree, or command of the said courts."

The foregoing section had its origin in the Act of March 1, 1831 (4 Stat. 487, chap. 99), which was enacted in order to correct the abuses committed by the federal courts under a law then in force (Act of September 24, 1789, 1 Stat. 73,. 83, chap. 20), which provided that the United States courts "shall have power . . . to punish by fine or imprisonment,. at the discretion of said courts, all contempts of authority in any cause or hearing before the same." The lower federal courts acknowledged in their decisions subsequent to the Act of March 1, 1831, that that act had substantially curtailed the previously undefined power of said courts to punish for contempt. It was so acknowledged also by the Su-

preme Court in *Ex Parte Wall,* 107 U. S. 265, 27 L. Ed. 552;
*Re Savin,* 131 U. S. 267, 33 L. Ed. 150; *Re Cuddy,* 131 U. S.
280, 33 L. Ed. 154; and *Eilenbecker* v. *District Court,* 134
U. S. 31, 33 L. Ed. 801.

In 1918, the Supreme Court held in *Toledo Newspaper
Co.* v. *United States,* 247 U. S. 402, 62 L. Ed. 1186, that Sec-
tion 268 of the Judicial Code, *supra,* authorized the federal
district court to punish *summarily* for contempt, the publica-
tion, while a suit was pending, of articles and cartoons tend-
ing to provoke public resistance against an order of injunc-
tion and to influence the decision to be rendered by the court
in the matter pending before it. Dissenting from the major-
ity opinion, Mr. Justice Holmes and Mr. Justice Brandeis,
in an opinion written by the former, expressed themselves
thus:

"In December the case was tried *summarily without a jury* by
the judge who thought his authority contemned, and in the follow-
ing year he imposed a considerable fine. The question is whether he
acted within his powers under the statutes of the United States.

"The statute in force at the time of the alleged contempts con-
fined the power of Courts in cases of this sort to where there had
been 'misbehavior of any person in their presence, or so near thereto
as to obstruct the administration of justice.' Section 268, Jud.
Code, . . . Before the trial took place an act was passed giving a
trial by jury upon demand of the accused in all but the above men-
tioned instances. October 15, 1914, c. 323, sections 22, 24, 38 Stat.
738, 739. In England, I believe, the usual course is to proceed in the
regular way by indictment. I mention this fact and the later statute
only for their bearing upon the meaning of the exception in our law.
When it is considered how contrary it is to our practice and ways
of thinking for the same person to be accuser and sole judge in a
matter which, if he be sensitive, may involve strong personal feel-
ing, I should expect the power to be limited by the necessities of
the case 'to insure order and decorum in their presence' as is stated
in *Ex parte Robinson,* 19 Wall. 505. See Prynne, Plea for the Lords,
309, cited in McIlwain, the Hight Court of Parliament and its Su-
premacy, 191. And when the words of the statute are read it seems
to me that the limit is too plain to be construed away. To my mind

they point and point only to the present protection of the Court from actual interference, and not to postponed retribution for lack of respect for its dignity. . . .

"It appears to me that this statement is enough to show that there was no emergency, that there was nothing that warranted a finding that the administration of justice was obstructed, *or a resort to this summary proceeding,* but that on the contrary when the matter was over, the judge thought that the 'consistently unfriendly attitude against the court,' and the fact that the publications tended "to arouse distrust and dislike of the court,' were sufficient to justify this information and a heavy fine. *They may have been, but not, I think, in this form of trial.* I would go as far as any man in favor of the sharpest and most summary enforcement of order in Court and obedience to decrees, but when there is no need for immediate action contempts are like any other breach of law and should be dealt with as the law deals with other illegal acts." (Italics ours.)

The foregoing quotation sufficiently indicates that the fundamental reason which the two learned Justices Holmes and Brandeis had for dissenting from the opinion of the majority, was that the respondent editors were punished *summarily* by the same judge they had offended, and had been deprived of the right granted by the federal statute to persons accused of contempt—when said offense has not been committed in the presence of the court or sufficiently near to interrupt its proceedings—of being tried by a jury.

The federal statute, section 268, *supra,* comprises three different modalities of contempt: (*a*) the misbehavior of any person in the presence of the court or so near thereto as to obstruct the administration of justice; (*b*) the misbehavior of any of the officers of the court in their official transactions; and (*c*) the disobedience or resistance by any person to any lawful decree of the court. The cases falling under the first modality may be punished summarily by the court. In those falling under the other two modalities the accused is entitled to be tried by a jury.

The conviction of Nye and Mayers was based on the ground that the acts carried out by them constituted "mis-

behavior so near the presence of the court as to obstruct the administration of justice." The trial court considered the case as falling under the first modality of Section 268 of the Judicial Code, proceeded to hear the evidence without the intervention of a jury, and sentenced defendants summarily. The Supreme Court reversed the judgment and said:

"Mindful of that history, we come to the construction of section 268 of the Judicial Code in light of the specific facts of this case. The question is whether the words 'so near thereto' have a geographical or a causal connotation. Read in their context and in the light of their ordinary meaning, we conclude that they are to be construed as geographical terms. . . . It is not sufficient that the misbehavior charged has some direct relation to the work of the court. 'Near' in this context, juxtaposed to 'presence,' suggests physical proximity not relevancy. . . . There may, of course, be many types of 'misbehavior' which will 'obstruct the administration of justice' but which may not be 'in' or 'near' to the 'presence' of the court. Broad categories of such acts, however, were expressly recognized in section 2 of the Act of March 2, 1831 and subsequently in section 135 of the Criminal Code. It has been held that an act of misbehavior though covered by the latter provisions may also be a contempt if committed in the 'presence' of the Court. Yet in view of the history of those provisions, meticulous regard for those separate categories of offenses must be had, so that the instances where there is no right to jury trial will be narrowly restricted. If 'so near thereto' be given a causal meaning, then section 268 by the process of judicial construction will have regained much of the generality which Congress in 1831 emphatically intended to remove. If that phrase be not restricted to acts in the vicinity of the court but allowed to embrace acts which have a 'reasonable tendency' to 'obstruct the administration of justice' then the conditions which Congress sought to alleviate in 1831 have largely been restored. . . .

"The acts complained of took place miles from the District Court. The evil influence which affected Elmore was in no possible sense in the 'presence' of the court or 'near thereto.' "

The Supreme Court by a majority of its members and with the dissenting vote of Mr. Justice Stone, in which Mr. Chief Justice Hughes and Mr. Justice Roberts concurred, reversed the judgment against Nye and Mayers and over-

ruled its own decision in *Toledo Newspaper Co.* v. *U. S.,* *supra.*

The insular act, first subdivision of Section 1 of the Law of Contempt, *supra,* defines three different modalities of contempt: (*a*) The physical act of breaching the peace, making noise or any other disturbance directly tending to interrupt the proceedings; (*b*) disorderly, contemptuous or insolent conduct towards a court or justice thereof, *in its presence,* and tending to interrupt its proceedings; and (*c*) disorderly, contemptuous or insolent conduct towards a court or justice thereof, *during its session,* and tending to interrupt its proceedings.

We will discard from the present discussion modalities (*a*) and (*c*), for in the one as well as in the other, the act constituting contempt must be carried out while the court is in session.

The facts imputed to respondent—the truth of which must be considered as admitted for the purposes of the motion— amount undoubtedly to contemptuous and insolent conduct, for we can conceive of no greater disdain, lack of respect, and insolence towards a court than attempting to deceive the court and to interrupt its proceedings by reporting to it false facts, with knowledge of their falsity.

Is it necessary that in order that the acts constituting the contemptuous and insolent conduct towards the court may be considered as contempt, said acts be carried out in the presence of the court while the same is in session? Modality (*b*) of the statute only requires that said acts be carried out "in the presence of the court".

In the case of *People* v. *Torres,* 56 P.R.R. 578, wherein the contempt consisted of an assault and battery against a district judge, in one of the corridors of the court building, after the session of the court had ended and while the judge was leaving his office with the object of going home, this Supreme Court affirmed the judgment of the court below, saying:

"If the contempt on account of which appellant was punished were direct, there would not be room for the slightest contention. If it were constructive, or of doubtful nature, then a careful consideration is required.

"Was it direct, that is, was it committed in the immediate presence of the court?

"For a correct answer to the question, we must first establish what is meant by presence of the court.

"In American Jurisprudence, *supra,* when summing up the jurisprudence on the matter, the following appears:

" 'In defining what is meant by "the presence of the court," as the term is used with reference to contempts, it is said that "the court" consists not of the judge, the courtroom, the jury, or the jury room individually, but of all of these combined. The court is present wherever any of its constituent parts is engaged in the prosecution of the business of the court according to law. In some states it is held that any act which is calculated to impede, embarrass, or obstruct the court in the administration of justice is to be considered as committed in the presence of the court. In others it is held that only such contempts as are committed within ocular view, or range of vision, are to be considered as committed in the "presence of the court." In a few instances the courts have passed upon the facts of the particular case under review and decided whether the contempt complained of was committed in the presence of the court without laying down any fixed rule in that respect.' 12 Am. Jur., sec. 5, p. 392.

"In the instant case the contempt was not committed while the court was in session. The court was presiding a trial for murder. The court adjourned. The jury was impaneled in the room used for the purpose on the upper floor of the court building. Shortly after the adjournment, while the judge was leaving his office and was walking along the corridor close by the courtroom, he was assaulted by the defendant."

In *Cooke* v. *United States,* 267 U. S. 517, 69 L. Ed. 767, cited with approval in *Nye* v. *U. S., supra,* the contempt involved was that committed when a litigant, following instructions from his attorney, entered the office of the judge during a recess of court, and delivered to the judge a letter containing offensive words. The Supreme Court agreed with

the trial court that the act of the attorney amounted to contempt, but reversed the judgment and remanded the case to the court below for further proceedings, because the trial judge had considered the case "as if the objectionable words had been uttered against him in open court."

In the case at bar the acts charged against the respondent attorney were carried out in the office of a justice of this court, while the latter was in the discharge of his duties, and the report made by respondent to said justice for transmission to the court, was closely connected with a proceeding pending before the court and in which respondent acted as the legal representative of one of the parties.

The complaint states facts that, in our opinion, if proved, would be sufficient to constitute contempt.

The motion to dismiss the proceeding is hereby denied.

MR. JUSTICE TODD, JR., concurring.

I concur in the result of the foregoing decision because, it being alleged in the third paragraph of the complaint that when respondent made to Mr. Justice De Jesús the statements mentioned in the preceding paragraph, that is, the report of what had happened to him, he asked that magistrate to transmit his statements to the Supreme Court of Puerto Rico; and it being further alleged, in the fourth paragraph of the complaint, that said magistrate transmitted the said statements to this Supreme Court in compliance with the request of the respondent, which allegations must be taken as true for the purpose of the motion to dismiss, said statements may be considered as having been made by the respondent in the presence of the court, for Mr. Justice De Jesús did nothing else than to comply with the request alleged to have been made by the respondent; and it may be considered, at least constructively, that respondent made those statements in the presence of the court.

I wish to state, further, that I do not agree with the restrictive interpretations that the majority opinion gives to the

case of *Nye* v. *U. S.*, 85 L. Ed. 733, and to the dissenting opinion of Mr. Justice Holmes in *Toledo Newspaper Co.* v. *U. S.*, 247 U. S. 402, 62 L. Ed. 1186.