**In the Matter of the Application to Adjudge Herbert BROGDON in Criminal Contempt.**

**Misc. No. HS–85–7.**

United States District Court, W.D. Arkansas, Hot Springs Division.

Dec. 11, 1985.

Steven N. Snyder, Asst. U.S. Atty., W.D. Ark., Fort Smith, Ark., for plaintiff.

Phillip M. Clay, Wood, Smith & Schnipper, Hot Springs, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

This action was commenced by the United States of America as a Petition for Prosecution for Criminal Contempt, filed September 18, 1985, against respondent Herbert Brogdon. Upon the Petition and supporting affidavit of Assistant United States Attorney, the Honorable Steven N. Snyder, the Court entered an Order to Show Cause on October 7, 1985, directing respondent to appear on November 6, 1985, to answer the charges levied against him in the Petition. The matter was rescheduled for a hearing to the Court on November 7, 1985, at 10:00 a.m.

The matter was tried to a completion in one day. At the conclusion of all testimony, the Court took the matter under advisement. Parties were afforded the opportunity to file post-hearing briefs on the issues developed in the course of the hearing. All

briefs having been received, the matter is now ready for a decision.

Jurisdiction is based upon 18 U.S.C. §§ 1, 401 and Rule 42, Federal Rules of Criminal Procedure. Because the Court previously has found that the criminal contempt here being prosecuted was not a "serious offense", but, rather, that it was a "petty offense", the respondent was not entitled to a trial by jury. See *Bloom v. Illinois*, 391 U.S. 194, 198, 88 S.Ct. 1477, 1480, 20 L.Ed.2d 522 (1968); *In re Weeks*, 570 F.2d 244, 246 (8th Cir.1978), n. 3.

The Court incorporates into this Memorandum Opinion findings of fact and conclusions of law.

■ The burden of proof for a conviction for criminal contempt is that each element of the offense must be proved beyond a reasonable doubt. *Clark v. United States*, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933). There are three essential elements which the government must so prove; (1) that the juror must knowingly and willfully give untruthful answers in response to voir dire questions, (2) that such knowing and willful false answers were utilized by the respondent to gain acceptance upon the jury, and (3) that the juror's acts obstructed the administration of justice. *Clark v. United States*, supra; *Bays v. Petan Co. of Nevada*, 94 F.R.D. 587 (D.C.Nev.1982).

Concealment or misstatement by a juror upon voir dire examination is punishable as contempt if its tendency and design are to obstruct the processes of justice. *Clark v. United States*, 289 U.S. at 10, 53 S.Ct. at 467–68. The government has proved beyond a reasonable doubt that there was concealment, by failing to give truthful answers to the question posed in voir dire, by Brogdon, and that such was willful and deliberate. This willful and deliberate concealment of the truth prevented the disclosure of bias.

This willful concealment was the means whereby to accomplish his acceptance as a juror, and under cover of that relation to obstruct the course of justice. Mr. Justice Cardozo, writing for the United States Supreme Court in *Clark*, expressed that the conduct herein involved is a transgression of the authority of the Court and the judicial process as a whole.

A talesman when accepted as a juror becomes part of the court. *In re Savin*, 131 U.S. 267 [9 S.Ct. 699, 33 L.Ed. 150]; *United States [v. Dachis]*, 36 F.2d 601. The judge who examines on the vior dire is engaged in the process of organizing the court. If the answers to the questions are wilfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham. What was sought to be attained was the choice of an impartial arbiter. What happened was the intrusion of a partisan defender.

*Clark v. United States*, 289 U.S. at 11, 53 S.Ct. at 468.

On December 3, 1984, a new panel of petit jurors appeared in the United States District Court, Western District of Arkansas, Hot Springs Division, pursuant to duly issued summons, to commence service of a term of jury duty. Respondent was one of that group so summoned.

Prior to having been sworn as a member of the petit jury panel, Brogdon inquired of juror Betty Grafton as to whether she knew that the jury would be hearing a rape trial that day. Mrs. Grafton did not know Brogdon at that time. She did not invite the remark.

After all prospective jurors had arrived, Chief Deputy Clerk of the Western District, Taylor A. Joyce administered the following oath to the panel:

You do solemnly swear that you shall true answer make to such questions as may be put to you touching your qualifications to serve as petit jurors at the present session of this court, and in any particular case in which you are called to serve, and if qualified and impaneled that you will faithfully discharge your duties as such; So Help You God.

All the prospective jurors responded in the affirmative to this oath, including respon-

dent Brogdon. Mr. Joyce clearly and un-equivocally explained that this oath applied to the empaneling questions he would ask and to the questions which the Court and the attorneys would ask in voir dire.

After this new jury panel was qualified, court was called into session and the case of the *United States of America v. Kenneth H. Davis*, Number 84–60004–01, a criminal rape trial, was called for trial before a jury to be selected from the panel. The deputy clerk, under the random selection process, pulled the names of thirty-one prospective jurors for voir dire. In that number was the name of Herbert Brogdon.

Brogdon and the other thirty jurors were questioned by the Court and by counsel for both parties in regards to their individual qualifications to hear this particular matter. The first question asked by the Court was "do you know anything about the case, either of you?" There was no response from any of the thirty-one jurors. Throughout the voir dire process, Brogdon did not acknowledge having prior information or knowledge of the facts surrounding the *Davis* trial.

After the conclusion of voir dire and counsel for the parties had exercised their peremptory challenges, the twelve jurors and one alternate were seated and sworn to hear the matter. Brogdon was one of the twelve regular jurors selected. At that point, Mr. Joyce administered the following oath:

> You do solemnly swear that you shall well and truly try, and a true deliverance make, between the United States and Kenneth Huie Davis and a true verdict return according to the law and evidence; So Help You God.

Each of the jurors responded in the affirmative to such oath, including Brogdon.

After being sworn this jury retired to the petit jury room. As the jury was filing out of the courtroom, Brogdon commented to his fellow jurors that Davis had not been found guilty in the first trial and that he would not be guilty in the second trial. This statement was volunteered by Brogdon before any evidence had been received and before opening statements had been presented.

In the course of the trial Brogdon made various remarks to his fellow jurors about the prior trial which resulted in a hung jury. The Court had declared a mistrial after the jury in the first trial reported a hopeless deadlock. Brogdon stated that Davis' first trial ended in a hung jury, with the jury vote split six votes for guilty and six votes for not guilty. When asked the source of this information, Brogdon replied that he did not have to tell them his source and that the other jurors could not prove that he made the remarks. This is indicative of his knowing and willful concealment in the voir dire. Such knowledge should have been disclosed to the Court at the time the initial inquiry was posed to the panel. However, Brogdon chose to remain silent, harboring this information to the advantage of the defendant.

Juror Luke Nivens testified that he learned, through conversation in the foyer of the Courthouse prior to being assembled in the Courtroom for empaneling, that a rape case was to be tried. However, he knew nothing about the facts or circumstances surrounding the matter. Conversely, Brogdon not only knew the nature of the case to be heard, but he also was well acquainted with key defense witnesses and other facets of the defense.

Brogdon brought a Hot Springs *Sentinel Record* newspaper into the juryroom the second day of trial to confirm to the other jurors that, in fact, this trial was a second trial on the rape charges. However, no account, in that or any other media, reported a vote of the jury in the first rape trial. That information could only have originated from some source other than the media.

Brogdon openly admitted to his fellow talesmen that he had, in the past, drunk morning coffee with the mayor and town marshal of Amity, Arkansas, at a coffee shop in Amity on several occasions. Both of these individuals were witness on behalf of Davis. Brogdon's position with Arkansas Power and Light Company caused him

to be in and around Amity regularly. Through this work, he became familiar with these men. This relationship was not disclosed to the Court in the voir dire.

After the parties had rested, closing argument had been made, and the instruction had been given, the jury retired to commence deliberation. During the deliberative process, Brogdon made reference to his undying view that Davis had not been convicted before and that he would not be convicted by this jury. At no time did Brogdon take part in a true deliberative process. Much like the contemnor in *Clark*, Brogdon went outside the evidence, noting newspaper accounts. Brogdon "waved aside all argument and closed [his] ears to the debate. [He] had closed [his] mind to it before." *Clark v. United States*, 289 U.S. at 11, 53 S.Ct. at 468.

Although there was heated debate during the jury's deliberations, as was indicated by the testimony at the hearing herein, at no time did Brogdon attempt to actually deliberate or reflect upon his assessment of the case. Neither did he attempt to persuade others that their view was erroneous. Rather, he merely expressed his predetermined view of not guilty. He would laugh at inquiries as to the source of his information about the prior trial and reply that he did not have to tell them and that it would not be of any benefit for them to have that information because nothing he said could be used as proof against him later.

■ Of course, Brogdon had a misconception of the reach of the privilege afforded the deliberative process. Upon the submission of a prima facie case sufficient to satisfy the Court, "the light should be let in." *Clark v. United States*, 289 U.S. at 14, 53 S.Ct. at 469. In the case before the Court, the government presented evidence sufficient to satisfy the Court that the privilege should fall.

■ On December 5, 1984, a telephone call was placed from the home of Tommy McGough, the mayor of Amity, to the home of Herbert Brogdon. This call came after the Court had excused the jury for an overnight recess. The case had been submitted to the jury for a decision. However, deliberations were still in progress.

Brogdon admitted that Mrs. McGough inquired as to the outcome of the case. However, he testified that he informed her that deliberations were not over and that he could not talk about the case. This call negates the testimony that Brogdon only casually knew Mr. McGough, otherwise, Mrs. McGough would have been more hesitant to call a simple acquaintance of her husband about the outcome of a trial, especially when that simple acquaintance was a juror. This is further indicative of the role Brogdon was to play in winning a favorable decision for Davis.

On December 6, 1984, the Court declared a mistrial because the jury was unable to reach a unanimous verdict. At the time the mistrial was declared the jury vote was eleven votes for conviction and one for acquittal, with the single vote being that of Brogdon.

Through this course of activity it becomes clearly and persuasively obvious that Brogdon willfully and knowing failed to reveal his bias in favor of the defendant in the Davis trial. It is likewise obvious that he did so for the purpose of winning acceptance upon the jury. Thus, the culmination of these events was the obstruction of the administration of justice.

The oaths as administered by Chief Deputy Clerk Taylor Joyce were disregarded by Brogdon. However, this is not a trial for perjury. Notwithstanding, perjury has been proved. Brogdon's willfull and knowing conduct has cut a deep wound into the authority of the Court. For such conduct, punishment must be imposed to vindicate the authority.

Had Brogdon formulated his deep based belief of Davis's innocence upon all the evidence, there would be no contempt. However, he expressed this belief as he was leaving the courtroom before the first shred of evidence or the first word of argument had been heard. It is this bias that

426

the voir dire of jurors is intended to prevent.

A full disclosure of all events and circumstances which might have an effect upon a person's attitudes and beliefs as related to the case at hand is necessary in order to preserve the sanctity of the jury system. Without the honesty and openness of the jurors, the system shall cease to operate. While voir dire is not intended to become a confessional for hidden beliefs, it is mandatory that the questions be answered clearly, fully, and truthfully.

In view of the fact that the *Davis* case had been tried to juries on two occasions, both of which resulted in mistrials as related herein above, the Court determined that, in the interest of justice, the third trial should be held in a different division of the Western District of Arkansas. The third trial to a jury was commenced in the El Dorado Division, which trial resulted in a conviction.

Having reached the conclusion that the government has proven beyond a reasonable doubt that respondent Herbert Brogdon was guilty of criminal contempt, the Court shall entered a Judgment fixing punishment as provided by the law for the commission of a "petty offense." Pursuant to 18 U.S.C. §§ 1, 401, Rule 42 of the Federal Rules of Criminal Procedure, and an Order previously entered by the Court on November 1, 1985, a separate Judgment shall be entered contemporaneously herewith that respondent Herbert Brogdon be confined in a jail type facility for a period of SIXTY (60) days.