## COMMONWEALTH *vs.* ELISHA W. HAYNES, JR.
## ELISHA W. HAYNES, JR. *vs.* COMMONWEALTH.

At the trial of an indictment on the St. of 1868, *c.* 263, for selling adulterated milk, there was evidence that the defendant, (who was a son of the owner of a milk route,) with a companion who was in the same employment with himself, knowingly adulterated milk on its way for distribution to his father's customers, and then, having charge, with his companion, of its distribution from the wagon on which it was conveyed upon the route, caused a can of it to be delivered to one of the customers by the hand of his companion. *Held,* that he had no ground of exception to instructions to the jury, that, in the absence of proof of any previous contract to supply milk to the customer, the delivery might be deemed an act of sale; nor to an instruction framed on a supposition that the jury might find that he was in the employment of his father, although there was no averment in the indictment to that effect.

The provision of the St. of 1868, *c.* 263, § 2, that the penalties prescribed by § 1 for knowingly selling adulterated milk may be recovered on complaint before any court of competent jurisdiction, and one half of the fine imposed go to the complainant or informer, does not exclude the superior court from jurisdiction of an indictment for the offence.

A defendant in a criminal case, who obtains by writ of error a reversal of the judgment against him and is thereupon sentenced to a lesser punishment under the Gen. Sts. *c.* 146, § 16, is entitled to costs under § 17.

INDICTMENT on the St. of 1868, *c.* 263,* found and returned into the superior court in Suffolk at August term 1868, for selling

---

* The first three sections of the St. of 1868, *c.* 263, are as follows:

" SECTION 1. Whoever sells or exchanges, or has in his possession, with intent to sell or exchange, or offers for sale or exchange, adulterated milk, or milk to which water or any foreign substance has been added, knowing the same to be adulterated or to contain water or any foreign substance, shall, for the first offence, be punished by a fine of one hundred dollars, and, for any subsequent violation, a fine not less than one hundred dollars, nor exceeding three hundred dollars, and imprisonment in the house of correction not less than thirty nor more than ninety days.

" SECTION 2. The penalties provided in the preceding section, and those provided in the act to which this is in addition, [St. 1864, c. 122,] may be recovered on complaint before any court of competent jurisdiction ; and one half of the amount of fine imposed shall go to the complainant or informer, and the remainder to the treasurer of the city or town where the offence was committed.

" SECTION 3. It shall be the duty of every inspector of milk to institute complaint on the information of any person who may lay before him satisfactory evidence on which to sustain the same, and he shall be entitled to receive one half the amount of any penalty recovered therefor, and shall pay over the same to the person who has first given him the information on which the complaint was made."

nine quarts of milk adulterated with water to Mary Cogan at Boston on July 29, 1868.

At the trial, before *Lord,* J., it appeared " that the defendant did not, and his father did, own a milk route, and carry milk " from Sudbury to Boston, " to his customers in the county of Suf folk , " that Mary Cogan was one of the said customers in Bos-ton, and had notice, some two years before July 1868, " that the father owned the milk route and carried on the business, and that the defendant did not ; " that on the night of July 28, 1868, while the milk designed for distribution the next day to said customers in Boston was at Cambridge on its way from Sud-bury to Boston, the defendant and Aquarius Breen, who was in the same employment with the defendant, knowingly adul-terated it with water ; " that on July 29 the cans of adulterated milk were conveyed by wagon, by the defendant, to Boston, Breen going with and assisting the defendant ; that the wagon was stopped at the corner of a street in Boston, and the defend-ant took one of the cans of adulterated milk from the wagon and handed it to Breen to deliver to Mary Cogan, and Breen went some distance down one street and then did deliver said can of adulterated milk to her, and the defendant at the same time took another can of the adulterated milk to deliver to another of said customers, (one of them going through one street and the other another,) and went down another street, not in sight of Breen, and they then joined and resumed their work of delivery in other parts of the city ; and that the father was not present."

" There was no evidence of any contract upon which the milk was furnished ; and the judge ruled that, there being no evidence of any contract of sale, each delivery might be deemed an act of sale, and that, if the defendant and Breen made the delivery, they would be responsible severally as well as jointly, and this, whether the sale was then made by them either as principals or as agents, and that the mode of delivery was such as to authorize the jury to find it to be the joint act of the defendant and Breen.

" The judge also ruled, and instructed the jury, that if the de-fendant was in the employ of his father, who owned the milk and milk route and carried on the business, and the defendant and

Breen, well knowing the milk to have been adulterated by the addition of water thereto, took charge of the wagon, and upon it brought the adulterated milk to Boston to distribute to said customers there, and the defendant gave the can of adulterated milk to Mary Cogan at the time charged in the indictment, then there was evidence of a sale by the defendant to Mary Cogan of adulterated milk knowing it to be adulterated, and the jury would be authorized in finding the defendant guilty."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*F. F. Heard*, for the defendant. 1. The first instruction to the jury, that "each delivery might be deemed an act of sale," was erroneous. *Commonwealth* v. *Williams*, 6 Gray, 1.

2. This is a statute offence, and must be strictly pleaded. St. 1864, *c*. 122, § 4. St. 1868, *c*. 263. There is no averment that the defendant was in the employment of his father; and therefore the second instruction was inapplicable and erroneous.

*C. Allen*, Attorney General, for the Commonwealth.

WELLS, J. The first instruction appears to have been applied to the absence of proof that there was any previous contract for supplying milk to Mary Cogan, or any express contract of sale at the time of delivery. The instruction, that a delivery of milk by a dealer to a customer might be deemed an act of sale, was correct, and proper to be given.

The instruction was also correct that both parties engaged in the distribution of milk from the same wagon, and coöperating therein, knowing it to be adulterated, were severally liable, as well as jointly.

The act of sale is the same, and the offence the same, whether the defendant sold for himself or for another.

*Exceptions overruled.*

At April term 1871 of the superior court, after this decision, the defendant filed a motion to arrest the judgment for want of jurisdiction of the offence, and *Dewey*, J., by his request, reported the question for the determination of this court, before whom it was argued in November 1871.

*Heard*, for the defendant. By the St. of 1868, *c.* 263, § 2, the superior court had not original, but only an appellate jurisdiction. The term " complaint " is technical, descriptive of proceedings before magistrates. Shaw, C. J., in *Commonwealth* v. *Davis*, 11 Pick. 432, 436. See also *Rex* v. *Robinson*, 2 Burr. 799, 805; *Commonwealth* v. *Howes*, 15 Pick. 231, 233; *The King* v. *Carlile*, 3 B. & Ald. 163; *Rex* v. *Buck*, 2 Stra. 679; 1 Russell on Crimes (4th ed.) 88; Purcell Crim. Pl. 4. The mention of other methods of proceeding impliedly excludes that by indictment 2 Hawk. *c.* 25, § 4.

*C. Allen*, Attorney General, for the Commonwealth, cited Gen. Sts. *c.* 114, § 6; *c.* 176, § 2; *Colburn* v. *Swett*, 1 Met. 232, 235; *Taunton* v. *Sproat*, 2 Gray, 428; *Commonwealth* v. *Hudson*, 11 Gray, 64, 66.

CHAPMAN, C. J. This is an indictment under the St. of 1868, *c.* 263, § 1, for selling adulterated milk, knowing the same to be adulterated. The penalty for the first offence is $100. By § 2, the penalty may be recovered on complaint before any court of competent jurisdiction. The defendant contends that the word " complaint " is technical; and that the language of the statute is exclusive, and does not authorize an indictment. But the usual import of the term " may," as used in the statute, is permissive, and not exclusive; and the whole legislation on the subject shows it to be so in this case. By the Gen. Sts. *c.* 114, § 6, the superior court has jurisdiction of all crimes, offences and misdemeanors. By *c.* 176, § 2, when the fine does not exceed $100, police courts have jurisdiction concurrently with the superior court. The method of prosecution in the superior court is by indictment, and not by complaint; but in the police court it is by complaint; and the words " may be recovered on complaint before any court of competent jurisdiction, and one half of the amount of fine imposed shall go to the complainant or informer," are used here with reference to the appropriation of the fine in cases where there is a complainant, and not for the purpose of excluding the jurisdiction of the superior court in cases where no person desires to obtain a part of the fine. We think the superior court has jurisdiction to proceed by indictment. *Motion overruled.*

Judgment and sentence to pay a fine of $300 were then rendered by the superior court against the defendant, who thereupon sued out a

WRIT OF ERROR to reverse the judgment for the reason that the indictment did not aver any previous violation of the statute by him and therefore no other punishment than a fine of $100 was warranted by its provisions. The judgment was reversed, with the consent of the attorney general, and judgment and sentence for a fine of $100 were rendered in this court under the Gen. Sts. c. 146, § 16, which provide that, "when a final judgment in a criminal case is reversed by the supreme judicial court on account of error in the sentence, the court may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before which the conviction was had."

The plaintiff in error moved for costs, under § 17, which provides that "if the defendant in a criminal case is discharged on a writ of error, the legal costs shall be borne by the Commonwealth;" and the motion was argued in March 1872.

*Heard*, for the plaintiff in error.

*C. R. Train*, Attorney General, for the Commonwealth.

GRAY, J. The provision, now incorporated into the Gen. Sts. c. 146, § 17, that if the defendant in a criminal case is discharged upon a writ of error the legal costs shall be borne by the Commonwealth, was first enacted by St. 1842, c. 54, § 3. At that time, upon the reversal of a judgment in error for excess in the sentence, the only judgment which could be given was for the discharge of the prisoner. *Shepherd* v. *Commonwealth*, 2 Met. 419 *Britton* v. *Commonwealth*, 1 Cush. 302. The subsequent enactment of St. 1851, c. 87, repeated in the Gen. Sts. c. 146, § 16, authorizing this court, upon reversing a judgment for error in the sentence, to render such judgment as should have been rendered, or to remit the case for that purpose to the court before which the conviction was had, cannot be construed to deprive a party of his costs, who has prevailed upon the writ of error; and in effect obtained his discharge from the original judgment, although he is sentenced anew to a lesser punishment.

*Judgment for costs against the Commonwealth*