HENRY F. BRENNAN & others *vs.* ELECTION COMMISSIONERS OF BOSTON.

Suffolk.   January 8, 1942. — February 5, 1942.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Elections.   Words, "May."*

The provisions of G. L. (Ter. Ed.) c. 54, § 108; c. 50, § 1, that election commissioners upon written application of ten voters in a ward "may" open the envelope containing a voting list sealed up under § 107, and "may make a copy of the list as checked," are not mandatory, and do not entitle the applicants as of right to be furnished with such a copy.

PETITION, filed in the Superior Court on November 29, 1941, for a writ of mandamus.

The case was heard by *Giles,* J., upon the petition as amended and an answer admitting the allegations of fact in the amended petition but stating reasons why the petitioners should not have relief. The judge ruled as matter of law that the petitioners were not entitled to the issuance of the writ and dismissed the petition. The petitioners appealed and alleged exceptions.

*E. E. Fuchs,* (*F. E. Kelly* & *A. West* with him,) for the petitioners.

*R. H. Hopkins,* Assistant Corporation Counsel, (*N. Moger,* Assistant Corporation Counsel, with him,) for the respondents.

QUA, J. The question in this case, presented upon an answer in the nature of a demurrer to a petition for a writ of mandamus by more than ten voters of Ward 22 of the city of Boston, is whether the petitioners have a right, upon written application under G. L. (Ter. Ed.) c. 54, § 108, to compel the respondents to furnish them copies of the voting lists showing the names of the persons checked as having voted in that ward at the city election held on November 4, 1941. The petition states that similar applications have been filed for all the wards of the city.

In our opinion the petitioners have not the right to compel the furnishing of the lists, and the trial judge rightly sustained the demurrer.

General Laws (Ter. Ed.) c. 54, § 107, provides for the sealing up, after the count has been recorded, of the ballots cast at each polling place at State and city elections, and of the voting lists, and for their delivery to the city clerk. Then follows § 108 in these words: "Upon written application, signed by at least ten voters in the town or ward of which the precinct forms a part, or upon written request signed by the chairman of any ward, town or city committee, the city or town clerk may open the envelope containing such voting list and may make a copy of the list as checked. After any such voting list has been so copied, said clerk shall at once enclose the list in an envelope and seal up the same and certify thereon to the identity of such lists."

By various provisions of law the references in §§ 107 and 108 to the city or town clerk are made applicable in Boston to the board of election commissioners.[1] The petitioners contend that the word "may" in § 108, where it occurs in the expressions "may open the envelope" and "may make a copy of the list," is to be construed as the equivalent of shall, and that the section is mandatory and absolutely requires the commissioners, upon receiving an application in writing by ten voters, not only to open the envelope and make a copy of the list as checked, but also to deliver

---

[1] See St. 1913, c. 835, § 8; G. L. (Ter. Ed.) c. 50, § 1.

the copy to the applicants. They cite many instances in other jurisdictions where "may" in a statute has been construed as equivalent to "shall" and as importing a command.

We concede the principle of these decisions and would apply it ourselves in proper instances. See, for example, *County of Worcester* v. *Schlesinger*, 16 Gray, 166, and *O'Connell* v. *Cambridge*, 258 Mass. 203, 205. This construction is particularly appropriate in cases where the statute confers upon a public officer power in certain circumstances to take action necessary in the public interest or for the enforcement of individual rights, and where it cannot be supposed that it was intended to confer upon him a discretion to refuse to act in the precise circumstances which call for the exercise of the power. *Attleboro Trust Co.* v. *Commissioner of Corporations & Taxation*, 257 Mass. 43, 51, 52. Nevertheless it remains true that "may" is not an apt word to express a positive mandate. It is a word of permission and not of command. It should be construed, if possible, in accordance with its true signification. *Commonwealth* v. *Haynes*, 107 Mass. 194, 197. *Phillips* v. *Fadden*, 125 Mass. 198, 201. *Commonwealth* v. *Chance*, 174 Mass. 245, 247. *Rosenthal* v. *Nove*, 175 Mass. 559, 560. *Hampden Trust Co.* v. *Leary*, 186 Mass. 577, 581. *Cheney* v. *Coughlin*, 201 Mass. 204, 211, 212. *Commonwealth* v. *Mekelburg*, 235 Mass. 383, 384. *Dascalakis* v. *Commonwealth*, 244 Mass. 568, 569. *Irwin* v. *Municipal Court of the Brighton District*, 298 Mass. 158, 160. In general, throughout our statutes, the distinction between words of permission or discretion and words of command, including the distinction between "may" and "shall," has been carefully observed. *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 488. We should not in any case lightly conclude that the distinction has been overlooked. And it is particularly difficult to come to that conclusion in c. 54, § 108, when we note that in almost every section throughout the chapter the word "shall" is consistently employed where a command is intended, sometimes in direct contrast with the word may in the same section;[1] that

[1] See, for example, §§ 1, 2, 6, 7, 9, 12, 13, 19, 21, 23, 24, 42, 43, 45, 74, 81, 83, 86, 92, 98, 102, 109, 119, 123, 134, 143, 144.

"shall" is used throughout § 107 which directs the sealing up and depositing of the ballots and voting lists; and that the use of "shall" is resumed in the sentence in § 108 immediately following the sentence which we are now called upon to construe.

There is further significance in the history of § 108. The section originated in St. 1874, c. 376, § 43. This required the used check lists to be sealed and secured in the same manner as the ballots and then contained this proviso: "provided, that nothing in this act shall be construed to prevent the clerk of any city from furnishing a copy of the check-list after it has been used in any ward, upon the application of not less than ten legal voters resident therein; and immediately upon such copy being furnished, the check-list shall be again sealed up." In the Public Statutes of 1882 the provision found its place in § 29 of c. 7, but no longer in the form of a proviso. It there reads: "The city clerk may furnish a copy of a check-list after it has been used in any ward, upon the application of not less than ten legal voters resident therein; and immediately upon such copy being furnished, the check-list shall be again sealed up." It thus appears that the word "may" in the present statute resulted from a recasting and abbreviation of the proviso in the statute of 1874. That proviso took the form of a permission to the clerk, when backed by the application of ten legal voters, to do what he was otherwise altogether forbidden to do, i. e., open up the lists after they had been sealed. To say that he was compelled to do so would be to read into the statute something not there expressed and not necessarily implied. It is not as if an absolute right had first been given to the ten voters and the clerk had then been given jurisdiction to enforce that right. In such a case the decisions cited by the petitioners to which reference has already been made might be pertinent. It would seem, therefore, that the word "may" was advisedly used in its accurate sense in the 1882 revision to express the true purport of the Act of 1874. That word has remained in the section throughout subsequent revisions. The specific provision for the furnishing of a copy was omitted from the

section by St. 1893, c. 417, § 175, and has not appeared in the section since that time.

There is also a significant contrast between G. L. (Ter. Ed.) c. 54, § 108, and the somewhat similar provisions relating to voting lists used at caucuses found in G. L. (Ter. Ed.) c. 53, § 111. The latter section reads thus: "The city or town clerk, upon written application signed by at least ten voters of a ward or town, for a copy of a list as checked, shall open the envelope containing the voting list used at any caucus in such ward or town and shall furnish to them a certified copy thereof as checked." Here the word "shall" is used throughout instead of "may." But this section did not originate in a permission similar to that which we have seen gave rise to c. 54, § 108. It apparently originated in St. 1896, c. 435, § 7, which provided that the board of election commissioners, upon the application of ten voters, "may unseal and open the envelope containing such voting list and shall furnish to such applicants a certified copy of the list as checked." Although "may" was used with reference to unsealing the envelope, "shall" was used from the beginning with reference to furnishing the copy. The seeming inconsistency in the use of the two words in the same section attracted the attention of the commissioners to consolidate the general laws, who recommended that "may" be changed to "shall," on the ground that it could not have been intended that there should be a discretion as to opening the envelope containing the list when the furnishing of the copy was mandatory. Preliminary Report of the Commissioners to Consolidate and Arrange the General Laws, Appendix B, vol. 1, page 79. The Legislature approved the change by St. 1918, c. 257, § 15, and it subsequently passed into the General Laws. No corresponding change was needed or was made in the section which afterwards became G. L. (Ter. Ed.) c. 54, § 108 (then St. 1913, c. 835, § 305), which had always been permissive in form, and which then no longer contained any specific provision for the furnishing of a copy.

There is also a provision in mandatory form ("shall") in G. L. (Ter. Ed.) c. 53, § 37, relative to the furnishing of a

certified copy of the voting lists used in primaries upon written request of the chairman of any ward, town or city committee, or of at least ten voters. This was first enacted by St. 1916, c. 179, § 7, and was reënacted with amendments by St. 1920, c. 493, § 1. The last mentioned statute in § 2 also amended what is now G. L. (Ter. Ed.) c. 54, § 108, but did not change "may" to "shall" and did not insert any provision specifically referring to the furnishing of a copy. Whatever reason may exist for a difference between the section relating to elections (G. L. [Ter. Ed.] c. 54, § 108) and those relating to caucuses (G. L. [Ter. Ed.] c. 53, § 111) and primaries (G. L. [Ter. Ed.] c. 53, § 37), it would seem that the former has always been permissive and the latter have always been mandatory; that a provision for the furnishing of a copy has been omitted from the former and has been included in the latter; and that the Legislature has recognized and perpetuated this distinction. We must construe the statutes as they are written. *Commonwealth v. S. S. Kresge Co.* 267 Mass. 145, 148.

> *Exceptions overruled.*
> *Appeal dismissed.*