H. HOOVER GARABEDIAN *vs.* COMMONWEALTH.

Suffolk.   May 6, 1957. — May 29, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*Contempt. Constitutional Law,* Due process of law.   *Witness,* Contempt.
   *Moot Question.   Error, Writ of.*

A proceeding on writ of error to reverse a summary judgment of a court
   sentencing the petitioner for a criminal contempt did not become
   moot by reason of the fact that the petitioner served the sentence
   imposed.   [120]
A plea of in nullo est erratum in a proceeding on writ of error admits
   facts well pleaded in the petition.   [120]
A witness at a trial who was summarily adjudged "guilty of contempt of
   court because of wilful and intentional perjury" and sentenced to
   imprisonment therefor upon leaving the stand, without being given
   notice of the charge of contempt or an opportunity to secure counsel,
   prepare a defence and present it at a hearing, was denied due process
   of law under the Fourteenth Amendment to the Constitution of the
   United States where it appeared that the judge based his adjudication
   of contempt not wholly upon what he himself observed but in part
   upon testimony of others, some of which was taken in the absence of
   the witness.   [124–125]
A summary adjudication by a trial judge that a witness was "guilty of
   contempt of court because of wilful and intentional perjury" was not
   conclusive upon the witness or his rights as to whether he was ac-
   corded due process of law respecting that charge, and allegations of
   the circumstances of the adjudication showing a want of due process
   were well pleaded in a petition by him for a writ of error to reverse
   the adjudication and were admitted by a plea of in nullo est erratum.
   [126]

PETITION for a writ of error, filed in the Supreme Judicial
Court for the county of Suffolk on May 15, 1956.

The case was reserved and reported by *Spalding,* J.

*Edward O. Proctor,* (*Edward O. Proctor, Jr., & Frank D.
Zeuli* with him,) for the petitioner.

*Samuel W. Gaffer,* Assistant Attorney General, for the
Commonwealth.

WILKINS, C.J.   This petition for a writ of error to reverse a summary judgment in contempt based upon a finding of perjured testimony in the Probate Court has been reserved and reported by a single justice without decision upon the petition, the return of the Probate Court, and the plea, for the determination of the full court.   The Commonwealth pleaded (1) in nullo est erratum; and (2) that the contempt was committed in the presence of the probate judge, that the Probate Court had jurisdiction, and that the petitioner has served his sentence.

No contention has been made, nor could one rightly be made, that the case is moot.   Although there is no way to restore time lost while serving sentence, a person is entitled to an effacement of the obloquy and stigma of an illegal conviction.   *Commonwealth* v. *Fleckner,* 167 Mass. 13.   See *Kenworthy & Taylor, Inc.* v. *State Examiners of Electricians,* 320 Mass. 451;   *Manchester* v. *Selectmen of Nantucket,* 335 Mass. 156, 158.

The effect of the plea of in nullo est erratum is to admit facts well pleaded.   *Jones* v. *Commonwealth,* 331 Mass. 169, 170, and cases cited.   Procedural contentions made on behalf of the Commonwealth may be more conveniently considered later.

The facts which we hold to be well pleaded in the petition are as hereinafter set forth.   The petitioner was admitted to the bar of this Commonwealth on October 17, 1955.   In the preceding September he was employed as a clerk in the law office in Worcester of Aram Garabedian, Esquire (hereinafter called Mr. Garabedian), to whom he was not related. On September 3, 1955, Mrs. Rollande T. Bonnet, a stranger to the petitioner, entered the office of Mr. Garabedian, who was on vacation, and told the petitioner that she wanted a divorce.   The petitioner advised her that he was not a member of the bar, but would make a memorandum of the facts to present to Mr. Garabedian upon his return.   Mrs. Bonnet in response to questions by the petitioner stated that she resided in Leicester in this Commonwealth;   that she was married at San Diego, California, to Fred A. Bonnet of

Southton, Texas, while both were in the naval service; that they resided in California until after they were both discharged from the service; that they lived for a short time with his mother in Southton and then in Leicester; that while they lived in Leicester her husband was guilty of acts of cruel and abusive treatment toward her; and that he left her there. A libel stating these facts was then typed and held in the office until Mr. Garabedian's return. Thereafter the libel, dated October 31, 1955, was filed, and notice by publication was given.

No appearance being entered for the libellee, there was an uncontested hearing before a judge of the Probate Court for the county of Worcester at which the libellant was represented by Mr. Garabedian. Neither a stenographer nor the petitioner was present. The libellant and her mother, Mrs. Daigneault, testified that the Bonnets last resided together as husband and wife at Leicester. After direct examination of Mrs. Daigneault conducted in English, the judge interrogated her for about ten minutes in French, a language not understood by Mr. Garabedian. At the termination of her testimony the judge said in substance in English, "That is all," and the witnesses and Mr. Garabedian left the court room. At that time there was offered no certificate of the marriage, and Mr. Garabedian informed the judge that he would send one to the judge, an arrangement to which the judge assented. Mr. Garabedian filed the certificate in court and later, being at the court on other business, advised the judge that he had done so. The judge then for the first time informed Mr. Garabedian that he doubted that the Bonnets had resided in Leicester, and that he had asked the State police to investigate.

On April 5, 1956, Mr. Garabedian received a telephone call from the registry of probate informing him that his client would be in court on the following morning and asking him to be present. He was given no reason for a second hearing. Upon arriving at the court room Mr. Garabedian found Mrs. Bonnet there with her mother and a lieutenant of the State police. There was no stenographer, and those

called to testify were not sworn or advised that their oaths
at the earlier hearing bound them.[1]

On the same day the petitioner, who had no knowledge of
any hearing in the Bonnet matter, was at the court house on
other business.    Learning that one of Mr. Garabedian's
cases was in order for trial and ascertaining that Mr. Gara-
bedian was in the Probate Court, the petitioner went there
for the sole purpose of advising him that he was wanted in
the other case.    Upon entering the court room, he observed
Mrs. Bonnet on the witness stand and an elderly woman,
whom he had never seen or talked with, but who he later
learned was Mrs. Daigneault, sitting with Mr. Garabedian.
He heard the judge accuse Mrs. Bonnet of lying when she
testified at the prior hearing that she had last lived with her
husband in Leicester.    Upon subsequent examination by
Mr. Garabedian, the petitioner heard her testify that she
had informed the petitioner, when she first met him, that
she had last lived with her husband in Leicester and that
her husband had paid a poll tax there.

The libellant's mother took the stand, and the following
occurred.  THE JUDGE: "Mrs. Daigneault, I spoke to you
in French, didn't I?"    A. "Yes."    THE JUDGE: "You lied
to me, Mrs. Daigneault?"    A. "Yes.  I will do anything for
my daughter to make her happy."    THE JUDGE: "Did Mr.
Garabedian talk to you about this case?"    A. "No."    THE
JUDGE: "Did Mr. Garabedian tell your daughter not to
mention Texas?"    A. "No."    THE JUDGE: "Did you have
any other conversation with Mr. Garabedian?"    A. "No."
Upon examination by Mr. Garabedian Mrs. Daigneault ad-
hered to this testimony.

A lieutenant of the State police, assigned to the district
attorney's office, was called to the stand by the judge.  He
testified that he had investigated the case; that he talked
with Mrs. Daigneault; that he telephoned the police in
Texas who talked with the husband; that the husband said
that he had never lived in Leicester; that the witness talked

---

[1] It seems clear that the lieutenant of the State police, Mr. Garabedian,
and the petitioner, who were testifying for the first time, must have been
sworn at the second hearing.

with Mrs. Bonnet, who told him that she last lived with her husband in Texas, that they moved from Leicester to Texas, and that she later returned home from Texas; and that the witness asked her who told her not to mention Texas, and she said it was Mr. Aram Garabedian.

Mr. Garabedian took the stand and denied that he ever told Mrs. Bonnet not to mention Texas. There was no testimony from any witness that the petitioner advised Mrs. Bonnet not to mention Texas, or that she informed him that they resided in Texas following their residence in Leicester.

The petitioner, called by Mr. Garabedian, testified to the facts about his interview with Mrs. Bonnet hereinbefore set forth and also that she told him that her husband stayed at Leicester for about two weeks after moving from Texas, that while there her husband, who had been drinking, struck her, and that he left her taking the wedding gifts with him; that the petitioner drafted the libel and a military affidavit, which she signed; and that he never talked with her again except to say "Hello" when he saw her later in Mr. Garabedian's office. The judge asked the petitioner if he had ever seen Mrs. Bonnet before, and he replied in the negative. The judge also asked the petitioner if he asked her point blank where she last lived with her husband; and the petitioner answered that he had, and that she told him it was in Leicester.

The petitioner then left the stand. He was not guilty of any disorderly conduct, insulting demeanor to the court, interruption of its proceedings, or impairment of respect to the court's authority. The judge after sentencing Mrs. Bonnet, Mrs. Daigneault, and Mr. Garabedian to jail, pointed his finger at the petitioner and said, "Hoover, I didn't believe a word you said. I sentence you to thirty days in jail."

A finding was then made that at a hearing on the divorce libel of Rollande T. Bonnet against Fred F. Bonnet the petitioner was guilty of wilful and intentional perjury, and that it was adjudged that the petitioner "is guilty of contempt of court because of wilful and intentional perjury by falsely testifying under oath upon a material fact with

intent to obstruct justice and said perjury did obstruct justice," and it was ordered that the petitioner be committed to the Worcester County jail for thirty days. Pursuant to a mittimus the petitioner was taken to jail and kept there for thirty days. On April 6, 1956, the judge entered a decree that the libel be dismissed for want of jurisdiction.

The case of *In re Oliver,* 333 U. S. 257, is conclusive that the petitioner was denied due process of law under the Fourteenth Amendment to the Constitution of the United States. This, the fourth assignment of error, we are bound to hold to be well taken. In the *Oliver* case the petitioner had appeared as a witness before a State court judge who was conducting a secret "one-man grand jury" investigation of crime. At the close of the petitioner's testimony the judge summarily charged him with contempt in having given false and evasive testimony, and sentenced him to jail without allowing opportunity to secure counsel, or to prepare a defence, or to cross-examine another witness upon the partial basis of whose testimony given in the petitioner's absence the judge's action was taken, or to summon other witnesses. In holding that there had been a denial of due process, the court, after discussing *Ex parte Terry,* 128 U. S. 289, and *Cooke* v. *United States,* 267 U. S. 517, made a statement of the applicable principles, which we have recently quoted in *Crystal, petitioner,* 330 Mass. 583, 588–589: "Except for a narrowly limited category of contempts, due process of law as explained in the *Cooke* case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment

is essential to prevent 'demoralization of the court's authority' before the public." 333 U. S. 257, 275. The court in the *Oliver* case immediately went on to say (pages 275–276): "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out." See, to the same effect, *Savin, petitioner,* 131 U. S. 267, 277.

In the case at bar, since the petitioner did not testify at the first hearing, any perjury must have occurred at the second hearing. On the latter occasion the judge, it would seem, had already made up his mind as to the disposition of the divorce libel, which he ordered dismissed on the same day, and there could have been no obstruction of justice by the petitioner whether or not he committed perjury. Under the Federal cases this would not be contempt. *Ex parte Hudgings,* 249 U. S. 378, 383–384. *Clark* v. *United States,* 289 U. S. 1, 11. *Matter of Michael,* 326 U. S. 224, 227–229. We do not discuss the applicability of the test of contempt described in some of our cases as the "reasonable tendency of the acts done." *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 33. *Berlandi* v. *Commonwealth,* 314 Mass. 424, 455–456. See *Matter of Sleeper,* 251 Mass. 6, 17. We rest our decision upon another ground. The judge must have based his finding of contempt against the petitioner not wholly upon what he himself observed, but, in part at least, upon the earlier testimony of others, some of which was taken in the absence of the petitioner. Hence, we are not confronted with the rare situation where a judge can correctly detect falsity just from listening to one witness testify. See *In re Oliver,* 333 U. S. 257, 277. In these circumstances, due process called for an opportunity to secure counsel and to prepare and present a defence.

The Commonwealth makes the procedural contentions (1) that the evidence on which the finding of contempt was made is no part of the record; and (2) that "certain allega-

tions" of the petition which are conclusions of law or which tend to contradict the return are not admitted by the plea. It is true that matters of fact which contradict the record are not admitted. *Riley* v. *Waugh*, 8 Cush. 220, 222. *Conto* v. *Silvia*, 170 Mass. 152, 154. But this means a record of judgment conclusive upon him or his rights. *Bodurtha* v. *Goodrich*, 3 Gray, 508, 512. In the case at bar no stenographer was present. The contention, if upheld, would place any person who might enter a court room altogether at the mercy of any attempt which might be made to assert jurisdiction over him to impose a sentence for contempt, however improper or violative of constitutional rights that sentence might be. The finding that the petitioner was guilty of contempt "because of wilful and intentional perjury by falsely testifying under oath upon a material fact with intent to obstruct justice and said perjury did obstruct justice" is not conclusive upon him or his rights. The allegations of the evidence made in the petition are essential to a setting forth of the circumstances in which the adjudication of contempt was made. They are in no true sense a contradiction of the record. See *Aronson* v. *Commonwealth*, 331 Mass. 599, 602; *Brown* v. *Commonwealth*, 335 Mass. 476, 479.

The petitioner has served the full sentence imposed. There is neither reason nor justice in remanding the case for further proceedings, and no suggestion for remand has been made. No further proceedings should be held. *Walsh* v. *Commonwealth*, 224 Mass. 39, 41.

The petitioner is entitled to costs, to be paid by the county of Worcester. G. L. (Ter. Ed.) c. 250, § 12. *Haynes* v. *Commonwealth*, 107 Mass. 194, 198. *Walsh* v. *Commonwealth*, 224 Mass. 39, 41. *Jones* v. *Commonwealth*, 327 Mass. 491, 497. *Lewis* v. *Commonwealth*, 329 Mass. 445, 452.

*Judgment of sentence reversed.*

*Petitioner not remanded for further proceedings, but awarded judgment for costs against the Commonwealth to be paid by the county of Worcester.*