CLAIRE M. FAY *vs.* COMMONWEALTH.

Suffolk. September 13, 1979. — January 10, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, & ABRAMS, JJ.

*Contempt. Practice, Criminal,* Probation. *Due Process of Law,* Probation revocation.

A judge's oral notification to a defendant, together with written notice from the probation department, adequately conveyed to the defendant the nature of the charges against her which would be considered in a proceeding to determine whether her probation should be revoked and whether she should be adjudged in contempt of court. [502-503]

There was no merit to a defendant's contention that she was not given an adequate opportunity to present her defense in a proceeding to determine whether her probation should be revoked and whether she should be adjudged in contempt of court. [503]

---

A defendant who suffered no detention or loss of liberty for the violation of her probation until after the adjudication that she was guilty thereof was not entitled to a preliminary hearing on the charges against her. [503-504]

Where a judge stated in open court, and in the presence of the defendant, the evidence relied upon and his reasons for revoking the defendant's probation, the defendant was not denied due process by the absence of a written statement as to those matters. [504-505]

In a proceeding to determine whether a defendant had violated her probation and whether she should be adjudged in contempt of court, the judge did not deny the defendant her right to counsel by refusing her request for a continuance to allow her to secure the services of a particular attorney, which was made after the hearing had commenced and after she had knowingly and intelligently waived her right to counsel. [505]

There was no merit to a defendant's contention that the judge who heard her contempt charge should have recused himself. [505-506]

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on December 21, 1978.

The case was heard by *Liacos, J.*

*Richard H. Gens* for the plaintiff.

*Ellen L. Janos,* Assistant Attorney General (*Steven A. Rusconi,* Assistant Attorney General, with her) for the Commonwealth.

QUIRICO, J. This is an appeal by the petitioner Claire M. Fay from an order of a single justice of this court [1] affirming an adjudication by a judge of the Superior Court that (a) Fay was guilty of contempt of court, and (b) that she had violated the terms of probation previously imposed on her. Fay alleges that she was not afforded proper notice and an opportunity to be heard, that she was denied her right to counsel, that the judge should have recused himself on the contempt charge, and that the court did not comply with the requirements of *Gagnon* v. *Scarpelli,* 411 U.S. 778 (1973), in revoking her probation. We hold that there was no error and affirm the action of the single justice.

---

[1] A single justice of this court granted Fay's petition for a writ of error. For a discussion of the procedure to be followed in contempt cases, see *Katz* v. *Commonwealth, ante* 305, 309-312 (1979).

Fay was the trustee of several trusts which owned and operated nursing homes in this Commonwealth. She was also a beneficiary of the trusts, and participated in the daily management of the nursing homes. On October 3, 1977, she pleaded guilty to three indictments charging her with larceny in connection with the operation of the nursing homes. On one indictment she was given a sentence of six months' imprisonment, and ordered to pay a fine of $600, costs of $9,000, and restitution of $18,826.35. On a second indictment she was ordered to pay a fine of $600 and restitution of $2,243.26, and on a third indictment, to pay a fine of $600 and restitution of $4,958.84. She was placed on probation for two years on the last two indictments. The fines were to be paid by October 29, 1977, and restitution in the total amount of $26,028.45 was to be paid as directed by the probation officer. On December 1, 1977, the sentence of six months was revised to permit Fay to be released on December 22, 1977, and she was placed on probation as to the remainder of the sentence.

On February 22, 1978, pursuant to a request of the probation department, Fay appeared before a Superior Court judge regarding payment of the $1,800 in fines. The judge ordered her to submit by March 1, 1978, a schedule for payment of the restitution and costs. On the latter date she and her attorney[2] met with the chief probation officer and paid the fines. The court again ordered her to submit, within one week, a schedule for payment of the restitution and costs. On March 10, 1978, Fay's attorney filed with the Superior Court probation office a letter containing a payment schedule of $2,000 a month, the first payment to be made on July 20, 1978. The letter added the condition that the "payment schedule is, of course, predicated on Mrs. Fay receiving monies from those parties who in turn owe her monetary obligations." At that time legal title to the nurs-

---

[2] At different times during the course of the proceedings, Fay was represented by two attorneys, both of whom she dismissed. She appeared pro se at the contempt/probation revocation hearing. She is being represented by another attorney for this appeal.

ing homes was in one Louis Almeida, with Fay holding a mortgage thereon.

On September 1, 1978, again at the request of the probation department, a hearing was held by a Superior Court judge regarding Fay's failure to make payments. The judge ordered Fay to appear with counsel on September 15, 1978, and to submit a financial statement so that the court might determine her ability to pay the restitution and costs. At the September 15 hearing, Fay submitted a financial statement showing her only asset to be a very small amount of cash on hand and showing a small weekly income. An assistant attorney general also appeared at this hearing, and represented to the court that she was prepared to prove that the petitioner had actual control over substantial amounts of money. The judge stated that he did not accept as true the financial statement which had been filed by Fay, and set October 31, 1978, as the date for a hearing on whether Fay was in contempt of court for filing a false financial statement and whether the court should revoke her probation for failure to comply with the condition that she make restitution. On October 18, 1978, the probation department sent Fay a letter formally notifying her of the October 31 hearing and setting forth three alleged violations of her probation.[3]

At the October 31 hearing, Fay's attorney requested leave to withdraw because Fay had dismissed him. Fay indicated to the court that she intended to represent herself, and

[3] The three alleged violations were:

"1. During term of probation, you have violated criminal laws of the United States and of the Commonwealth of Massachusetts, any ordinance of a municipality of said Commonwealth or the criminal law of the United States.

"2. You have engaged in an anti-social conduct which shall furnish good cause for the Court to believe that the probationary order should be revoked in the public interest.

"3. You have failed to pay restitution in the sum of $26,028.41 and court costs in the sum of $8,000.00, as submitted by a plan dated March 10, 1978."

There is nothing in the record to reconcile the latter figure with that of $9,000 originally ordered to be paid as costs.

signed a form waiving her right to be represented by counsel. The court heard extensive evidence regarding Fay's continued control of nursing home funds and receipt of a considerable sum of money for her personal use. At the conclusion of the hearing the judge found Fay guilty of contempt for filing the false financial statement, for which he imposed a sentence of five months to be served at the Plymouth County House of Correction, which sentence he suspended and placed her on probation for three years. He also found that she had violated the terms and conditions of her probation requiring her to make restitution,[4] whereupon he revoked the probation and imposed an indeterminate sentence to be served at the Massachusetts Correctional Institution at Framingham to be followed by probation for three years.

1. *Notice and opportunity to be heard.* "Technical accuracy of pleading has not traditionally been required in contempt cases, but the alleged contemnor should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. *Woodbury* v. *Commonwealth,* 295 Mass. 316, 323 (1936)." *Katz* v. *Commonwealth, ante* 305, 312-313 (1979) (holding that tenant's motion to hold landlord in criminal contempt, together with judge's order to show cause constitutes sufficient notice). *Sussman* v. *Commonwealth,* 374 Mass. 692, 696-697 (1978). *School Comm. of New Bedford* v. *Dlouhy,* 360 Mass. 109, 117 (1971). *Garabedian* v. *Commonwealth,* 336 Mass. 119, 124-125 (1957). *Dolan* v. *Commonwealth,* 304 Mass. 325, 337 (1939).

In the present case, the judge told Fay in open court at the September 15 hearing that the October 31 hearing would be for the purposes of determining (a) whether her probation should be revoked because of her failure to pay restitution and costs, and (b) whether she should be adjudged

---

[4] The order of October 3, 1977, that Fay pay the sum of $9,000 as costs was complied with on November 1, 1978, and it is no longer an issue in this case.

in contempt for filing a false financial statement with the court. The written notice of October 18, while containing two vague charges, contained a third very specific charge. Any vagueness of the first two charges was immaterial surplusage in view of the third very specific charge that Fay had failed to pay restitution and court costs as required by the conditions of her probation, especially in light of the precise notice given by the judge to Fay in open court on September 15, 1978, of the purpose for the hearing to be held on October 31, 1978. *Kartman* v. *Parratt*, 535 F.2d 450, 453-454 (8th Cir. 1976). These two notifications, taken together, adequately conveyed to Fay the nature of the charges against her. *In re O'Leary*, 325 Mass. 179, 182 (1950). *Martineau* v. *Perrin*, 601 F.2d 1201, 1205 (1st Cir. 1979).[5] *United States* v. *Evers*, 534 F.2d 1186, 1188 (5th Cir.), cert. denied, 429 U.S. 1024 (1976).

The gist of the testimony at the final hearing was that Fay had wilfully attempted to transfer funds to put them out of the reach of the Commonwealth, that she had appropriated nursing home funds for her own use, and that she had received mortgage payments. Fay defended by attempting to prove that Almeida (and not she) had actual control of the funds, and that she had not received any mortgage payments from Almeida. In addition to presenting her own witnesses, Fay extensively cross-examined those of the Commonwealth. We have reviewed the record of the lengthy hearing in the Superior Court and conclude that she was given an adequate opportunity to present her defense.

2. *Preliminary hearing on probation revocation.* The United States Supreme Court has required a preliminary hearing in cases where parole might be revoked. *Morrissey* v. *Brewer*, 408 U.S. 471 (1972). It later extended the requirement to probation revocation cases. *Gagnon, supra.*

---

[5] Fay also had a right to notice of the charges against her in the context of the probation violation charges. *Gagnon* v. *Scarpelli*, 411 U.S. 778, 786 (1973). Because the notice is essentially the same as that required for the contempt charges, we have treated the notice question as a single issue.

In support of this extension, the Court held that revocation of probation was constitutionally indistinguishable from revocation of parole "where sentence has been imposed previously," *id.* at 782 n.3, and noted that *Morrissey* requires a preliminary hearing for the defendant at the time of his arrest and detention for violation of parole or probation. *Id.* at 782. The purpose of the preliminary hearing is to protect the rights of the parolee or probationer who, being at liberty, is taken into custody for alleged violation of his parole or probation conditions, and detained pending a final revocation hearing. *United States* v. *Sciuto,* 531 F.2d 842, 846 (7th Cir. 1976). *United States* v. *Strada,* 503 F.2d 1081, 1084 (8th Cir. 1974). Cf. *Stefanik* v. *State Bd. of Parole,* 372 Mass. 726, 730-731 (1977). After Fay was released from custody on December 22, 1977, as the result of the revision of her sentence, she remained at liberty on probation continuously until the completion of the hearing on the merits of the issues whether she was guilty of contempt and whether she had violated the conditions of her probation. She was not arrested or otherwise taken into custody pending that hearing. Therefore, having suffered no detention or loss of liberty for the contempt or the violation of her probation until after the adjudication that she was guilty thereof, she was not entitled to a preliminary hearing.

3. *Written findings.* Fay alleges that the judge failed to comply with the requirement of *Morrissey* and *Gagnon* that the fact finder provide a written statement of the evidence relied upon and reasons for revoking parole. *Gagnon, supra* at 786. As we have previously noted, the *Morrissey* Court (and by extension the *Gagnon* Court) was not writing an inflexible code of procedure; it was setting forth a procedure which would satisfy due process requirements. *Stefanik, supra* at 728. The judge in open court, and in Fay's presence, reviewed the evidence and stated his findings and his reasons for revoking probation.[6] Fay therefore had ac-

---

[6] A court stenographer recorded these findings and reasons and subsequently reduced them to writing in preparing a transcript of the proceedings.

tual knowledge of the "evidence relied on and reasons for revoking [probation or] parole," *Gagnon, supra* at 786, quoting *Morrissey, supra* at 489, and subsequently obtained a written copy in the form of a transcript. We hold that the requirements of due process were satisfied by this procedure. See *State* v. *Sommer,* 388 A.2d 110, 112 (Me. 1978) and cases cited.

4. *Right to counsel.* We need not concern ourselves here with the question whether, when, and in what circumstances a defendant charged with violation of the conditions of his probation is entitled to be represented by counsel at the hearing on that issue. Since the hearing held in this case involved not only the charge of violation of probation but also a charge of contempt, we assume for the purposes of our decision that Fay was entitled to be represented by counsel. *Katz, supra* at 315. *Garabedian, supra* at 125. At the start of the hearing, Fay filed a written waiver of counsel and elected to proceed without counsel. S.J.C. Rule 3:10, 370 Mass. 911 (1976). See now Rule 8(d) of Mass. R. Crim. P., 378 Mass. 858 (1979); *Faretta* v. *California,* 422 U.S. 806 (1975); *Commonwealth* v. *Jackson,* 376 Mass. 790, 795 (1978).

We conclude from our review of the record that Fay made this waiver and election knowingly and intelligently. Midway through the first day of the hearing Fay decided she wanted a particular lawyer (not one who had represented her at any other stage of this case), and requested a continuance because this lawyer was involved in another trial. The judge did not abuse his discretion in denying this request, especially since he knew that Fay had dismissed two other attorneys, and he had advised Fay initially that the charges against her were serious and that he would not delay the proceedings. There was no violation of Fay's right to counsel.

5. *Recusal.* Fay argues that the judge to whom she gave the financial statement should not have heard the contempt charge, because he characterized the statement when he received it as "an insult to the court." The argument is totally

without merit. *Mayberry* v. *Pennsylvania,* 400 U.S. 455 (1971), upon which Fay relies, involved direct, vicious, and continuing personal insults to the judge. The Court there held that "on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place." *Id.* at 464. The Court explicitly limited its holding to situations of outrageous, vilifying conduct which "cruelly slander[s]" a judge, noting that not even every personal attack upon a judge would require recusal. *Id.* at 465. See *Katz, supra* at 313. The conduct here does not fall within the *Mayberry* case, and the record reveals no personal bias on the part of the judge (indeed, it reveals continued patience and fairness). There was no need to have a different judge hear the contempt charge.

*Judgment affirmed.*