416 Mass. 190 (1993)
617 N.E.2d 635
COMMONWEALTH
vs.
RAPE CRISIS SERVICES OF GREATER LOWELL, INC.
Supreme Judicial Court of Massachusetts, Middlesex.
May 4, 1993.
August 16, 1993.
Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.
Wendy Murphy for the defendant.
The following submitted briefs for amici curiae:
Honora Kaplan for Mental Health Corporations of Massachusetts, Inc.
Scott Harshbarger, Attorney General, Neil S. Tassel & Pamela L. Hunt, Assistant Attorneys General, & Peggy A. Wiesenberg, for the Attorney General & others.
Patricia A. Correa & Diane M. Kottmyer for Domestic Violence Council.
Mitchell F. Dolin & Lisa A. Hertzer, of the District of Columbia, for National Coalition Against Sexual Assault & another.
Andrew Good for Massachusetts Association of Criminal Defense Lawyers.
*191 NOLAN, J.
In January, 1992, a Middlesex County grand jury returned several indictments against one Brett Cobb charging rape of a child. In April, 1992, Cobb filed a motion for exculpatory evidence and treatment records pertaining to the alleged victim. The motion provided: "The defendant ... moves this Honorable Court to order the Commonwealth to provide him with dates and locations and names of treating physicians, psychologists and/or counselors of the alleged victim in order that treatment records may be obtained.... Disclosure of such information is essential such that treatment records may be subpoenaed to this Court pursuant to Court order. Defense counsel is entitled to review said records ... to search for evidence of bias, prejudice, or motive to lie." The records are privileged from disclosure pursuant to G.L.c. 233, § 20J (1992 ed.).
In May, 1992, the Commonwealth provided information to Cobb, including the fact that the alleged victim had received counselling at the Rape Crisis Services of Greater Lowell (center). On or about June 4, Cobb served a subpoena on the center ordering the keeper of the records to appear at the Superior Court and to bring copies of all records pertaining to the alleged victim "dating from January, 1, 1991 to date."
On June 9, a judge in the Superior Court held a hearing on Cobb's motion. A representative of the center appeared at the hearing, without counsel or the records. The judge noted that the Cobb's motion did not specifically request the records, although he had provided a reason for wanting the information. Cobb orally requested the documents. The assistant district attorney argued that the records should not be disclosed because the records were privileged, G.L.c. 233, § 20J, and because Cobb had failed to make a preliminary showing of need. The judge allowed Cobb's motion and ordered the center to produce the records on or before June 17, 1992.
On June 17, the center filed a motion to reconsider and to quash the subpoena. On July 13, another judge in the Superior Court held a hearing on the center's motion. The judge ruled that Cobb was required to make a preliminary showing *192 of need to gain access to the records and ordered Cobb to submit an affidavit setting forth facts in support of his request. Thereafter, Cobb's attorney filed an affidavit that provided in pertinent part: "The documents which are requested flow from the alleged incident. As such they clearly contain statements of the alleged victim which relate to the incident. These statements were presumably made shortly after the incident. For these reasons [Cobb's] defense counsel is entitled to review these privileged records to search for evidence of the complainant's bias, prejudice or motive to lie."
A second hearing on the motion to quash was held on July 20. The center argued that the affidavit failed to establish an adequate preliminary showing of need for access to the records. The judge ruled that Cobb had met the preliminary burden and ordered the records disclosed to his counsel, subject to a protective order. The judge rejected the center's request that she review the records in camera prior to disclosure to counsel.
The center refused to comply with the judge's order and was held in civil contempt and ordered to pay $100 a day until it complied with the order. The judge stayed the fine pending appeal. The center appealed, and we granted a joint application for direct appellate review.
On September 24, 1992, Cobb pled guilty to all charges and was sentenced. The center had not yet produced the records. The judge vacated the contempt order.
The civil contempt order was intended to coerce the center to produce the subject records given Cobb's "need" in the underlying case. Cobb's pleas rendered moot his need for the records and the judge properly vacated the contempt order against the center. Cobb's plea and the judge's order vacating the civil contempt order render this appeal moot. See Kelley v. Kelley, 374 Mass. 826, 827 (1978).
The center nonetheless argues that it has been stigmatized due to the civil contempt citation and that this stigma constitutes a collateral consequence of sufficient magnitude to warrant appellate review. See Labor Relations Comm'n v. Boston Teachers Union, Local 66, 374 Mass. 79, 85 n. 2 (1977). *193 In support of its argument, the center relies on our decision in Garabedian v. Commonwealth, 336 Mass. 119 (1957), where we allowed an appeal from a contempt conviction after the alleged contemnor had served a thirty-day sentence. It is clear that the judge sentenced Garabedian to jail for punitive and not coercive purposes. In reversing Garabedian's conviction on due process grounds, we said: "Although there is no way to restore time lost while serving sentence, a person is entitled to an effacement of the obloquy and stigma of an illegal conviction." Id. at 120.
The center's reliance on Garabedian is misplaced. It has suffered no stigma akin to that which Garabedian suffered due to the punitive nature of the sentence imposed on him. Unlike its criminal counterpart, civil contempt is not punitive but "intended to achieve compliance with the court's orders for the benefit of the complainant." Furtado v. Furtado, 380 Mass. 137, 141 (1980). Vindication may be proper where a conviction of contempt results in the imposition of a punitive sentence and incarceration, but such is not the case here, where the finding of civil contempt was meant simply to coerce. Judicial economy and the lack of an adversary quality to this proceeding seal its fate. See Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975). The appeal is dismissed as moot.
So ordered.